# Wm. Reynolds, Administrator of Alex. Paul, vs. Manning, Stimpson & Co.

In a suit by an administrator, a witness for the plaintiff was objected to as *incompetent*, and, on his *voir dire*, stated he was a *creditor* of the estate but had *sold and assigned* his claim, worth $900, (of which some $700 was dependent on the result of this suit,) for $600, and received from the assignee two notes of $300 each, of which one was paid, the other not; that he does not *intend* to demand payment of the last note, if the plaintiff loses this suit, but the sale was fair and *without any condition* that the payment of the notes should depend upon such a result; that he had made an absolute transfer of all his interest, and had a *legal right* to recover the note from the assignee, but would not do so if this suit was lost, but would if there was a recovery in it; that it is his *intention* not to make the assignee pay the second note if this suit is lost, but he may see fit to change this intention, and there was no understanding between him and the assignee that could prevent his doing so; that when he made the transfer, he told the assignee he expected to be a witness for the plaintiff in this suit. Held:

That he was a *competent* witness; his *legal* interest, if any, was, at least, doubtful, remote and contingent; if he has any *direct* interest, it seems to depend upon an *honorary obligation*.

The old rule, excluding witnesses as incompent on the ground of interest, has been much relaxed, and the later decisions manifest an inclination in the courts to consider the objection as going to *credit* and not to *competency*, unless the interest is shown with clearness and certainty.

To render a witness incompetent on the ground of interest, the interest must be legal, certain and direct, not possible only, not remote, probable or doubtful.

A witness is not incompetent because he considers himself under an *honorary obligation*, respecting the matter in controversy, in favor of the party calling him, nor will his *mere belief* that he has an interest in the controversy, exclude him.

If the possessor of a disqualifying interest, assigns such interest with a view of becoming a witness, and such be the purpose of the assignment, it will not, *per se*, prevent his being a *competent* witness.

Entries made by a clerk in the regular course of business, he having no interest, at the time, in stating an untruth, are admissible in evidence after the clerk's death, or on his becoming insane, on proof of his handwriting.

In this case the clerk was an Englishman by birth, who came to this country and remained but a few years, and then returned to England, unmarried, and leaving no relations here. More than three years before the trial, a letter was received from him, written in Australia, and he has never been heard from since. Held:

Reynolds, Adm'r of Alex. Paul, *vs.* Manning, Stimpson & Co.

That under these circumstances, entries made by him, as clerk, are admissible in evidence, on proof of his handwriting.

An offer to pay part of a claim which had been previously presented to the defendant, and which he refused to pay, made after suit brought and not accepted, is not admissible in evidence against the defendant.

There need not be an express declaration that the offer was confidential, or made without prejudice, to make such offer inadmissible; the nature of the negotiation and the character of the transaction, will be looked to to ascertain whether the offer was intended to be without prejudice.

The whole of what a party says at the same time, and relating to the same subject, must be given in evidence, but it is for the jury to consider, under all the circumstances, how much of the whole statement they deem worthy of belief, including as well the facts asserted by the party in his own favor, as those making against him.

APPEAL from the Superior Court of Baltimore City.

*Assumpsit* brought on the 8th of July 1855, by the appellant against the appellees, for 'work and labor done, and materials furnished by the plaintiff's intestate for the defendants. Plea, *non assumpsit*.

In the course of the trial, four exceptions were taken by the plaintiff to the rulings of the court below, (LEE, J.,) all of which are fully stated in the opinion of this court. The verdict and judgment were in favor of the defendants, and the plaintiff appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON, TUCK and BARTOL, J.

*H. Stockbridge* and *Wm. F. Frick* for the appellant:

1*st Exception.* The court erred in holding that the witness, Thos. H. Paul, has a legal interest in the result of this suit. The case of *Bent vs. Baker*, 3 *Term Rep.*, 27, has settled the doctrine that an interest to disqualify a witness, must be some *legal, certain* and *immediate* interest in the result of the suit, or in the record, and that principle has since been unquestioned in England and this country. The mere *belief* of the witness that he has an interest, or the pressure of a *moral* or *honorary* obligation upon him, short of a legal responsibility, goes to the question of his credibility, not

Reynolds, Adm'r of Alex. Paul, *vs.* Manning, Stimpson & Co.

his competency. 1 *Greenl. on Ev.*, sec. 388. 3 *G. & J.*, 282, *Stimmel vs. Underwood.* *Ibid.*, 355, *Watts vs. Garrett.* 5 *Md. Rep.*, 404, *Funk vs. Kincaid.* 6 *Md. Rep.*, 541, *Melvin vs. Melvin.* The case of *Crawford vs. Brooke*, 4 *Gill*, 213, does not conflict with this view. That case turned upon the construction of the Act of 1829, ch. 51. The assignor was admitted as a witness in a suit brought by the assignee in his own name, the assignment *being voluntary and without valuable consideration.* The question being, whether the assignment was *bona fide* under the Act, and the *motive* of the transfer being the object of inquiry, it was ruled that the assignor might be asked, "whether he did not make the transfer for the purpose of becoming a witness, and so remove the bar of the statute of limitation." This went to the point whether the assignee was capable to sue, not to the competency of the witness. Besides, in this case the *motive* of the assignment of the witness, as stated by himself, was "to better himself." He did not say he made the transfer *for the purpose* of becoming a witness, but only that, at the time of the transfer, *he expected to be a witness.* And, further, the assignment in this case was for a *valuable consideration*, in part paid, with a legal right to the balance, and could not be declared void under the Act of 1829. On this point see, also, 7 *Md. Rep.*, 602, *Pegg vs. Warford.*

*2nd Exception.* Entries in the books of an intestate, in the handwriting of a clerk who is beyond the seas and cannot be reached by process of the court, made by the clerk in the usual and regular course of his business, may be offered in evidence, by the intestate's administrator, in a suit between him and persons to be charged with such entries. The doctrine is established in 1 *Salk.*, 285, *Price vs. Earl of Torrington*; that entries made in the usual course of business by the plaintiff's clerk, who had no interest in stating an untruth, are to be received as proof of the facts stated in such entries, after the death of the clerk, on proof of his handwriting. The authorities cited in 1 *Smith's Lead. Cases*, 139, 143, establish this to be now the settled law in all the States in this country. 15 *Mass.*, 380, *Welsh vs.*

*Barrett.* 1 *Wash. Va. Rep.,* 76, *Lewis vs. Norton.* 2 *H. & J.,* 77, *Clarke vs. Magruder.* 7 *H. & J.,* 467, *King vs. Maddux.* The principle has been wisely extended to cases where the clerk from insanity, absence beyond the State, or for other reasons, could not be produced, nor his evidence taken by commission; the reason for admitting the entries being the same under these circumstances as in the case of his death. 2 *McCord,* 349, *Elms vs. Chevis.* 1 *Bay,* 480, *Tunno vs. Rogers, et. al.* 1 *Binney,* 234, *Sterrett vs. Bull.* 12 *Sergt. & Rawle,* 49, *Philadelphia Bank vs. Officer.* 8 *Watts,* 77, *Alter vs. Berghaus.* 2 *Watts & Sergt.,* 137, *Hay vs. Kramer.* 3 *Pick.,* 96, *Union Bank vs. Knapp.* 6 *Cushing,* 216, *Holbrook vs. Gay.* 1 *Smith's Lead. Cases, (5th Ed.,)* 397. In this case, the production of the clerk, who made the entries, was as much a matter of impossibility as though he were insane or dead. He had not been heard of for three years, and was even then in Australia, in a new and only semi-civilized country, where a commission could not reasonably be expected to reach him. The same reasons which, in case of his being dead, would render the entries made by him admissible in evidence, existed in full force under these circumstances. He was, for all practical purposes of getting at his evidence, dead; though sufficient time has not elapsed since he had been last heard of to create a legal presumption of his death.

*3rd Exception.* The offer of a sum, by way of compromise of a claim tacitly admitted, is receivable, (even *post litem motam,*) *unless accompanied with a caution that the offer is confidential.* 1 *Greenlf. on Ev.,* sec. 192. In *Wallace, et al., vs. Small,* 1 *Moody & Malkin,* 446, in 22 *Eng. C. L. Rep.,* 355, there was some difficulty in fixing the defendant with the contract. It appeared, however, that after action brought offer of a specific sum had been made. It was objected to, because, from the nature of the transaction, it was an offer for compromise, and must, therefore, be *understood* to be without prejudice, although nothing was said to that effect at the time. *Lord Tenterden* said: "It was *prima facie* evidence. *It is not said to be without prejudice,* and

65    v.15

an offer to compromise may very well be made without any restriction as to confidence." The case of *Thompson vs. Austen,* 2 *Dow & Ryl.,* 358, in 16 *Eng. C. L. Rep.,* 95, determines that the true principle upon which the offer is excluded, is *"the condition, express or implied, that no advantage is to be taken of it."* It must appear affirmatively that the party is willing to submit to such a sacrifice; that he does not mean to admit any responsibility, or that, if he does, the admission is *confidential.*

*4th Exception.* So far from there being no evidence of value, the evidence offered was *conclusive,* as an admission by the defendant, against his interest, and the court had no right, *on any ground,* to take the case away from the jury. It is true, the defendant, while he admitted the correctness of the plaintiff's claim, assumed to have a set-off, by way of unliquidated damages, against the item of $4000 for the engine, because the work " had been put upon an imperfect foundation, and had not been done in time." This additional statement was properly received in evidence, because he was entitled to the benefit of his whole statement. But undoubtedly it was for the *jury,* and not the *court,* to determine whether, upon the whole statement, anything was due the plaintiff or not. The rule is this: "Though the whole of what the party says at the same time, and relating to the same subject, must be given in evidence, yet it does not follow that all parts of the statement are to be regarded as equally worthy of credit; but it is for the jury to consider, under all the circumstances, how much of the whole statement they deem worthy of belief, including as well the facts asserted by the party in his own favor, as those making against him." 1 *Greenlf. on Ev., sec.* 201. Thus the jury might reasonably, and would probably, have believed the admission of the defendant, that the balance of the bill, amounting to $2386.99, was correct. But there was no plea of set-off in the case, and even if they were entitled, under the general issue, to allow the claim, as set up, they were not *bound* to allow it against the items of the bill, amounting to about $900, exclusive of the cost of the engine, which was $4000. Nor were they *bound* to al-

low the set-off upon the mere averment by the defendant, in a general way, that he had such a claim. For when they came to consider the alleged claim of the defendant to off-set damages for putting the engine " on an imperfect foundation," they would naturally have looked to the contract, which required the *defendants "to do the work of the foundation,"* and would not, without further proof, have held the plaintiff's intestate liable for what appeared from the evidence to be the defendants' own default. And when they further came to consider the defendants' claim for damages for alleged delay in putting up the work, they might either have taken the admitted correctness of the item in the bill, " for engine, May 1st, $4000," as sufficient proof to satisfy their minds *that there was no delay,* or they might have chosen to consider *the giving of a note, in part payment on June 3rd,* as a *waiver* of any forfeit under the contract, or as an admission that the delay was owing to the selection, by the defendants themselves, " of an improper foundation, which had to be altered by other machinists." These suggestions are only to illustrate the principle that the *whole* statement was properly before the jury, and it was for them to determine how much and what part of the whole statement they deemed worthy of belief. In *Smith vs. Blandy, Ryan & Moody,* 257, in 21 *Eng. C. L. Rep.,* 432, *C. J. Best* says, in reference to the declarations and admissions of a party to a suit: " The whole must be given in evidence; and what he says in his favor must not be taken as true, but must be left, under all the circumstances, for the jury to say whether they believe it or not." In *Rex vs. Clewes,* 4 *Carr. & Payne,* 221, in 19 *Eng. C. L. Rep.,* 355, a prisoner, by his confession, admitted he was present at the murder, *but took no part in it. Littledale, J.,* said: " I must leave the whole confession to the jury; and it is evidence for the prisoner and against him; but still the jury may, if they think proper, believe one part of it and disbelieve another."

*Chas. H. Pitts,* for the appellees, argued:

1st. That the court properly rejected the testimony of

Reynolds, Adm'r of Alex. Paul, *vs.* Manning, Stimpson & Co.

Paul. He had a direct pecuniary interest in the result of the suit. He was a creditor of the estate. His claim could not be paid without a recovery in this case. It is manifest from his own statement, that the assignment to Harper was not *bona fide*, but a mere contrivance to make himself a witness. He declared, at the time, to Harper that he expected to be a witness. He stated, upon his *voir dire*, that he would not make Harper pay the remaining note unless there was a recovery in this suit.

2nd. The entries in the book were clearly not admissible. Smith, who made them, was alive. His testimony might have been taken under a commission. 1 *Greenlf. on Ev.*, secs. 115, 116.

3rd. An unaccepted offer of compromise is not binding upon the party making it, and cannot be used in evidence against him. 1 *Greenlf. on Ev.*, sec. 192.

4th. Proof of work done and materials furnished is not sufficient. There must be proof of value upon which the jury can render a verdict. 1 *G. & J.*, 440, *Dyer vs. Dorsey.*

ECCLESTON, J., delivered the opinion of this court.

Wm. Reynolds, administrator of Alexander Paul, instituted this action of *assumpsit*, in the Superior Court of Baltimore city, against the defendants, Manning, Stimpson & Co., the present appellees, to recover money alleged to be due for work and labor done and materials furnished, by Paul the intestate, for the defendants.

At the trial four bills of exceptions were taken to the rulings of the court. Three of them present questions in regard to the admissibility of evidence, offered on the part of the plaintiff; and the fourth is based upon an instruction given to the jury, at the instance of the counsel for the defendants.

The first exception shows that Thomas H. Paul was called, by the plaintiff as a witness, to prove that the work and labor sued for was done by the plaintiff's intestate.

The defendants objected to the testimony of the witness,

upon the ground that he was interested in the result of the suit, and caused him to be examined on his *voir dire,* when he testified as follows:

That he was a creditor of the estate of said Alexander Paul, the assets of which estate, including the claim here sued for, were insufficient for the payment of the debts of the estate. That he had received one dividend two or three years before, and then expected to get a further dividend of about $900, some $700 of which was dependent upon the result of this suit. That the chief witnesses to prove the claim now sued on, were Miller and Maxwell, who were actually employed in doing the work, and knew its value, and that they had been in attendance as witnesses in the case. That being desirous to better themself, he agreed with one Harper, to sell and assign to him, all his interest in said estate, estimated to be worth $900, as aforesaid, for the sum of $600, and executed to Harper a written assignment to that effect, and received from him two notes in September 1854, for $300 each, one payable in six months after date, and the other payable twelve months after date. That said sale was fair and without conditions of any kind between him and said Harper, that the payment of said notes should depend upon the result of this suit. Harper paid the witness the amount of the first note, but had not paid the last, which being still in the possession of the witness was produced by him.

In reply to a question whether he intended to demand pay ment of the last note from Harper, if the present suit should be decided against the plaintiff, the witness stated that, as he then felt, he did not intend to do so, but that there never had been any agreement between him and Harper to that effect. That he had made an absolute transfer of all his interest, and had a legal right to recover the note from Harper; but would not do so, if the suit was lost; and that if there was a recovery in the suit he would make Harper pay the note. That Harper was a journeyman blacksmith, and he was not aware that Harper had any means, or property of any kind, except that arising from his daily labor. At the time he made the

transfer to Harper he told him that he estimated his share of the proceeds of this suit at $700, and that he expected to be a witness for the plaintiff in the suit.

On cross-examination, the witness further stated that the intention expressed by him, not to make Harper pay the second note, in case the suit was lost, was certainly his present intention, but that he might see fit to change the same, and that there was no understanding between him and Harper that could prevent his doing so.

After the statement made by this witness, upon his *voir dire*, the court decided he was incompetent, on the ground of interest; to which the plaintiff excepted.

In support of the rejection of the testimony of Paul, the reasons assigned in the notes of the appellees' counsel are:

"He had a direct pecuniary interest in the result of the suit. He was a creditor of the estate. His claim could not be paid without a recovery in this case.

"It is manifest from his own statement that the assignment to Harper was not *bona fide*, but a mere contrivance to make himself a witness. He declared, at the time, to Harper, that he expected to be a witness. He stated upon his *voir dire*, that he would not make Harper pay the remaining note unless there was a recovery in this suit."

The ancient rule which excluded witnesses as being incompetent, on the ground of interest, has, at a later period, been much relaxed; the later decisions manifesting, very clearly, an inclination in the courts, to consider the objection as going to the credit and not to the competency of the witness, unless the interest is shown with clearness and certainty. To render him incompetent the interest must be legal, certain and direct, not possible only, not remote, probable or doubtful. This subject has been fully considered by this court, in *Melvin vs. Melvin*, 6 *Md. Rep.*, 541, where many authorities are referred to and examined. See, also, *M'Ilroy & another vs. M'Ilroy & another*, 1 *Rawle*, 433.

A witness is not incompetent because he considers himself under an *honorary obligation*, respecting the matter in controversy in favor of the party calling him; nor will his mere belief

that he has an interest in the controversy, exclude him. How far his credibility may be affected by such matters the jury are to decide. 1 *Greenlf. on Ev.*, sec. 388, *Stimmel vs. Underwood*, 3 *G. & J.*, 283.

The objection to the witness in this case, on the ground of interest, is alleged to be a valid one, because the assignment of his claim to Harper was not *bona fide*, but merely a contrivance to make himself a witness; and therefore he has a direct pecuniary interest in the result of this suit. That the assignment was only a contrivance for such purpose, is said to be manifest, because the witness declared, at the time, to Harper, that he expected to be a witness, and stated upon his *voir dire*, that he would not make Harper pay the remaining note unless there was a recovery in this suit. The only evidence on the subject is the statement of this witness on his *voir dire*. It is true, he says, he sold and assigned his claim against the estate of the plaintiff's intestate, estimated to be worth $900 (some $700 of which was dependent upon the result of this suit) for $600, to Harper, and received from him two notes for $300 each, one of which has been paid, and the other not. That he does not intend to demand payment of the remaining note if the present suit be decided against the plaintiff. But, at the same time, the witness says the sale was fair, and without any conditions between him and Harper that the payment of the said notes should depend upon the result of this suit. That he had made an absolute transfer of all his interest, and had a legal right to recover the note from Harper, but would not do so, if this suit was lost; and that if there was a recovery in this suit he would make him pay. On cross-examination, he says, also, it is his intention not to make Harper pay the second note, in case this suit is lost, but that he may see fit to change the same, and that there was no understanding between him and Harper that could prevent his doing so.

In *Pegg, et al., vs. Warford*, 7 *Md. Rep.*, 582, issues were sent from the Orphans Court to try the validity of two wills. The caveatee, in support of the issues on his part,

offered to swear Rachael J. Warford as a witness, who was a
legatee or devisee under both wills, and the caveators objected
to her competency on the ground of interest.   To show her
competent, the caveatee produced two deeds executed by her.
One of them professed to convey to her brother, Hamilton
Warford, in consideration of natural love and affection, all
her interest, "under either of the wills."   The other deed,
after reciting that doubts had been expressed as to the effi-
cacy of the preceding deed to Hamilton Warford, to pass all
the interest the grantor had under *both wills,* and her desire
to divest herself of all and every interest in or thereafter to
accrue to her under both wills, and each and either of them,
"so as to render her a competent witness in relation to both
said instruments," conveys to F. W. Brune, in consideration
of the premises and the sum of five dollars, all the grantor's
interest under said wills, and each and either of them, sub-
ject to the legal effect of said deed to Hamilton Warford.
The objection to the competency of the witness was overruled
in the court below.

In deciding this question, on the appeal, the court say: "It
was, with some show of reason, contended that those deeds,
having been made merely to restore the competency of the
witness, and not being *bona fide* conveyances, are to be re-
garded as a fraud upon the. law, and, therefore, not effectual
to accomplish the purpose intended.   Though we have no
doubt that such was the design of this transaction, still this
court cannot assume as a legal fact, as the case is now pre-
sented, that the deeds in question were not executed in good
faith.   But whether they were or were not, they are suffi-
cient forever to conclude the grantor from assailing them upon
any such ground, and for this reason, her divestiture of all
interest under these testamentary papers, may be said to be
complete, by virtue of the deeds in question, and, therefore,
she is a competent witness."

If we are to be governed by this decision, and the rules
previously stated, relating to the interest requisite to render a
witness incompetent, we do not think the evidence in this
cause is sufficient to sustain the court below in having

rejected Paul as a witness.  His *legal interest*, if any, was at least doubtful, remote and contingent.  If he has any *direct* interest in this suit, it seems, from the testimony, to depend upon an honorary obligation.

The case of *Crawford vs. Brooke*, 4 *Gill*, 213, was referred to in *Pegg, et al., vs. Warford*, but the court did not think the principle settled in the former case was in conflict with the views expressed in the latter.  Nor do we consider it inconsistent with the decision in this.

There the first exception shows that the assignor of the account sued upon, was called as a witness to prove the services charged; and also to prove the acknowledgment thereof by the debtor, so as to take the claim out of the operation of the statute of limitations.  The witness was objected to, but the objection was overruled.

In the second exception, it appears that upon the cross-examination of this witness, the defendant's counsel asked whether the assignment was not made by him because the account was barred by limitations; and for the purpose of making himself a witness to prove the rendition of the services, and the acknowledgment and promise by the defendant's intestate; the counsel stating that the question was asked for the purpose of showing that the account had not been *bona fide* assigned.  The plaintiff's counsel having objected to the question, the court sustained the objection.

The decision in the first exception was affirmed, in the Court of Appeals, but that in the second was reversed.

In that case, it was not decided, on either exception, that the assignor was incompetent as a witness.

In regard to the second exception, it was held that, under the pleadings, it was competent for the defendant to prove that the account in question had not been *bona fide* assigned, as required by the Act of 1829, ch. 51, under which the suit had been instituted, in the name of the assignee.  It was also held that the assignor, having been offered and examined as a witness to sustain the claim, the court below should have permitted the question to have been asked, which the defendant's counsel proposed to ask.  The appellate court being

66     v.15

of the opinion that an assignee could not maintain a suit in his own name, under the Act of 1829, if it be shown that the assignment was made for the purpose of rendering the assignor a competent witness to prove the correctness of the assigned claim, and the liability therefor by the defendant, or whenever it is shown, by proof, that the assignment is not *bona fide.*

There the question was whether, under the Act of 1829, ch. 51, which authorizes a suit to be brought in the name of an assignee upon a claim *bona fide* assigned, could maintain a suit in his own name, upon a claim held by him under an assignment not *bona fide.* The cause of action in the present suit has never been assigned. And the question in reference to the incompetency of Paul as a witness, upon the ground of interest, based on the allegation that the assignment of his claim was not *bona fide,* is a very different question from that arising under the second exception in *Crawford vs. Brooke.*

When there exists such an interest as should disqualify the possessor thereof from testifying in relation to matters connected therewith, if, with a view of becoming a witness, he assigns his interest, although such is the purpose of the assignment, it will not, *per se,* prevent him from being a competent witness. How far the transaction should affect his credibility, is for the consideration of the jury. In one of the deeds, executed by the witness, in *Pegg, et al., vs. Warford,* it was recited as being her desire to divest herself of all her interest, "so as to render her a competent witness."

The second bill of exceptions contains the testimony of Hannah E. Schofield, which was offered by the plaintiff, for the purpose of enabling him to introduce, as evidence, certain entries in the books of the intestate. This witness testified that, five or six years before her examination, a certain James Smith was the book-keeper of Paul, the intestate; that Smith boarded at her father's house, that she was well acquainted with him, and with his handwriting; that about four years then past he left the country and went to England, which was his native country; that he was a young man without family, and, so far as she knew, had no relations in this country, that about three years previous to the trial of

this case, her father received a letter from said Smith who was then in Australia, where the letter was written; that she (the witness) read the letter and knew it was from him, and that since then he has not been heard from.

The plaintiff then offered to prove, by this witness, that certain entries in the books of the plaintiff's intestate were in the handwriting of the said Smith, for the purpose of offering those entries in evidence. But the defendants objected to the evidence, on the ground that it could only be admitted on proof of the death of said Smith; which objection the court sustained.

It has been long held that entries made by a clerk, in the regular course of business, he having no interest at the time in stating an untruth, should be received in evidence, after the clerk's death, on proof of his handwriting.

Whether such entries should be admitted, when the clerk is living, but is permanently residing beyond the limits of the State, conflicting decisions have been made.

If absence is sufficient in any case to render this kind of evidence admissible, it is difficult to imagine one where it would be more proper than in the present. The witness is an Englishman by birth, who came to this country and remained here but a few years. He then returned to England, leaving no relations here, never having been married. More than three years since a letter was received from him, written in Australia, and he has never been heard from since.

Many cases on this subject are collected in the *5th Amer. Ed. of Smith's Lead. Cases*, 1 *Vol., Margl. page* 142, *top page* 397, in a note to the case of *Price vs. The Earl of Torrington.*

*Holbrook vs. Gay*, 6 *Cush. Rep.*, 216, is a case in which, according to the laws of Massachusetts, if the entries in dispute had been made by the party and he had subsequently died, they would have been admissible. But, instead of dying, he became insane, and they were admitted because of the insanity. The court held such evidence to be clearly proper, where the case is one of permanent insanity, the only difficulty being to decide upon the degree of insanity that must be shown to justify the admission of such proof.

There are other cases in which the death of a witness, and his becoming insane, are considered as being alike sufficient to authorize their entries to be received in evidence. And several of the cases referred to in the note in *Smith's Lead. Cases* have held such entries equally admissible, where the witness is absent from the State.

The objection urged in the notes of the appellees' counsel against the evidence being received is, that the witness is alive, and his testimony might have been taken under a commission. But, if possible, it was barely possible, that within any reasonable time, if indeed ever, the testimony could have been obtained by sending the books, containing the entries, under a commission to Australia, in search of a young man whose previous habits of life had shown him to be of a roving or migratory disposition; and he not having been heard of for more than three years.

The third bill of exceptions commences with the testimony of Wm. H. Cowan, one of the plaintiff's witnesses, who stated that he was employed by the plaintiff's intestate, in his life-time, to collect from the defendants a claim against them for the construction of a steam engine, and work done in putting it up at the defendants' factory. That the account was made out by Paul, the intestate, and he, the witness, went with the account to the premises occupied by the defendants, where the steam engine was, and there saw Mr. Stimpson, one of the defendants, to whom he presented the account, which Stimpson examined and admitted that the items charged in it were correct, and that the work was done as therein charged; but said it had not been done within the time agreed upon, and had not been done properly; that it had been put upon an imperfect foundation. And Stimpson also said that they had been compelled to employ other machinists, to put it on another foundation, in order to get it in good running order. That they had been put to heavy expenses by reason of not getting the engine in time, and by making necessary alterations in it, and they declined paying the account. Stimpson also said that there was a forfeiture under the contract, of $200 a week, for not furnishing the

engine in time, and that they had suffered more from the delay, and the expenses they had been put to, than the amount claimed to be due.

The witness being asked by the defendants' counsel whether he did not know there was a contract in the case, under which the work had been done, replied, he knew there was a contract, but did not mean to say that the work done, was done under it.

The account mentioned by this witness was produced by him and read to the jury.   It contains:

Sundry items, before the 1st of May 1850, amount-
ing to . . . . . . . . . . . . . . . . $213.96,
The engine, charged at contract price, under date,
7th of May, 1850, . . . . . . . . . . 4000.00.
Sundry items between the 1st of May and 1st of Au-
gust 1850, amounting to . . . . . . - - 731.71

Total amount, . . . . . . . . $4,945.67
The credits given are:
1850.

March 1. By note at four months,    $500.00
  " 15.      "       "       "         500.00,
April  1.      "       "       "         500.00,
  " 13.      "       "       "         500.00,
  " 20. Old side of engine frame,      8.68
June   3. Note at four months,         550.00

$2,558.68.

Balance,. . . . . . . . . . . $2,386.99
The plaintiff produced a contract between his intestate, Paul, and the defendants, dated the 16th of February 1850, the execution of which was admitted.   It was agreed therein that Paul should furnish and put up for Manning, Stimpson & Co., the defendants, one engine, and boiler and gearing, to drive two run of stones.   After giving a particular description of the machinery contemplated, the contract then provides that the same shall be in complete running order, and

good workmanlike manner, by the first of May then next, for the sum of four thousand dollars, to be paid in four notes, each for five hundred dollars at four months, one of them to be dated the 1st of March, one the 15th of March, one the 1st of April, one the 15th of April, and the balance in two notes, dated the first of May, at four months, for one thousand dollars each.

By the terms of said contract, Manning, Stimpson & Co. were to do all masonry and brick work for the boiler and foundations of said machinery. And Paul agreed to forfeit $200 for every week's delay after the first day of May 1850, provided such delay should not be caused by or through Manning, Stimpson & Co.

Subsequently to the interview between the witness, Cowan, and the defendant, Stimpson, in regard to the account, this suit was instituted; and after that, the witness had another interview with the same defendant, in which he offered to pay the witness $1800 for the claim, which offer was refused. This testimony of the witness, in relation to the offer of $1800, was objected to by the defendants on the ground that it was an offer of compromise, *post litem motam*, and not admissible in evidence, which objection was sustained by the court, and excepted to by the plaintiff.

The question presented by this exception is, whether an offer to pay $1800 for a claim which had been previously presented to the defendant, amounting to $2,386.99, the offer not being accepted, is admissible in evidence against the defendants. The plaintiff's counsel insists that it is because the offer was not accompanied with a caution that it was confidential, or made without prejudice.

This subject is treated of with much clearness in the 4th *Amer. Ed. of Phillips on Evi.*, 1 *Vol.*, *page* 427, *note* 124. It is there said: " In general, however, both in England and America, the nature of the negotiation has been looked to, and that the offer was intended to be without prejudice, has been inferred from its being plainly an offer with a view to compromise. As observed by a learned judge, (MILLS, J.,) 'Offers of sums, prices or payments, made during an attempt

to *compromise, are not admissible, if not accepted.*' Otherwise as to the existence of a fact.'" Again, in the same note, we find it said: "The most, if not all, of the American cases have, like a large majority of the English, gone on the intrinsic character of the transaction, without requiring an express declaration that the communication should be without prejudice." And many authorities are cited in support of these views, to the correctness of which we feel bound to yield our assent.

Looking at the character of the offer before us, and the circumstances under which it was made, we think the court below committed no error in ruling it to be inadmissible.

It appears from the *fourth* bill of exceptions that the defendants asked the court to instruct the jury as follows: "Upon the pleadings and the proof in this cause, the plaintiff is not entitled to recover, because the plaintiff has offered no evidence from which they can find the value of the work done and materials furnished by plaintiff's intestate to the defendants." Which prayer being granted, the plaintiff excepted.

Looking to the contract, which was read to the jury, and the testimony of the witness, Cowan, respecting the interview between him and Stimpson, in relation to the account, we do not think it was proper for the court to have instructed the jury that the plaintiff was not entitled to recover because there was *no* evidence from which they could find the value of the work done and materials furnished by the plaintiff's intestate.

According to the testimony of Cowan, after Stimpson had examined the account, he admitted the items charged were correct, and that the work was done as charged. In addition to which, the contract shows the price of the machine was to be $4000. It is true, that at the interview alluded to, Stimpson said the work had not been done within the time agreed upon, and had not been properly done; that the engine had been put upon an imperfect foundation; that they had been compelled to employ other machinists to put it on another foundation, in order to get it in good running order. He alleged that these, with other objections to the claim, which were stated by him, had subjected the defendants to

heavy expenses, amounting to more than the sum claimed to be due from them, and declined paying the account.

In regard to the complaint relative to the alleged imperfect foundation, the plaintiff's counsel, in their printed argument, refer to the contract as showing that the defendants were bound "to do the work of the foundation."

In such a case, it was the province of the jury to ascertain and determine, from the evidence, whether anything, and if any, what was due to the plaintiff. But they were prevented from doing so, by the court's instruction.

In 1 *Greenlf. on Evi.*, sec. 201, when treating of admissions, one of the rules is thus stated: "Though the whole of what the party says at the same time, and relating to the same subject, must be given in evidence, yet it does not follow that all parts of the statement are to be regarded as equally worthy of credit; but it is for the jury to consider, under all the circumstances, how much of the whole statement they deem worthy of belief, including as well the facts asserted by the party in his own favor, as those making against him." See, also, the authorities cited in the note to this section.

Contrary to this rule, the instruction of the court, necessarily assumed, instead of leaving the jury to decide upon, the truth of the excuses alleged by Stimpson, why the defendants should not pay the balance stated as due by the account, the items of which, as also the doing of the work, were admitted by Stimpson, according to the testimony of the witness.

The ruling of the court below will be affirmed on the third bill of exceptions, and reversed on the first, second and fourth.

*Judgment reversed and procedendo awarded.*

(Decided May 16th, 1860.)