HARVEY L. HOLLER *v.* SARAH V. LOWERY
[No. 67, April Term, 1938.]

*Decided January 14th, 1938.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*George Henderson,* for the appellant.

*Lewis M. Wilson* and *W. Earle Cobey,* for the appellee.

OFFUTT, J., delivered the opinion of the Court.

Sarah V. Lowery, the appellee in this case, was injured on April 6th, 1937, while on the McMullen Highway near the Celanese Plant, which is located about four miles southwest of Cumberland, as the result of a collision between two automobiles, one operated by Harvey L. Holler, the appellant, the other by James H. Stevens.

Alleging that the accident was caused by the concurring negligence of the two defendants, she brought this action in the Circuit Court for Allegany County to recover for her injuries. The trial of the case resulted in a verdict and judgment for the plaintiff against both defendants, and from that judgment Holler took this appeal.

The record submits five exceptions, of which the first two relate to the court's rulings on the admission of evidence, and the last three to its rulings on the prayers. It was undisputed that the plaintiff, and a woman who

was with her at the time, were struck by an automobile driven by Stevens proceeding along the McMullen Highway on the wrong side, and forced against another automobile driven by Holler and injured. In the course of the trial one Gilbert Garlitz was offered as a witness for the plaintiff. He had testified that he had "seen the car hit Miss Lowery," that he had seen the "Holler car pull out * * * as though he was getting ready to leave," and that he had been "beside the Stevens car when it pulled out," and he was then asked "Did you see whose car it was that had crushed the Lowery girl?" An objection to the question was overruled, and that ruling is the subject of the first exception. Apart from the assumption that the two cars "crushed" the plaintiff, there was no possible criticism of the question. To crush may mean to compress with violence so as to bruise or break, the plaintiff had been pinched between the two cars so that her legs were broken, and she was severely bruised and lacerated about the body, there was therefore no discoverable impropriety in the use of the word "crushed." No objection was made to the question at the time on the ground that it assumed a fact, so that objection on that ground is not open for review. 2 *Poe, Pl. & Pr.*, sec. 261, 70 *C. J.* 538, 539, 549. There was therefore no error in that ruling. *Lange v. Affleck,* 160 Md. 695, 155 A. 150; *Carter v. Reardon-Smith Line,* 148 Md. 545, 129 A. 839; 4 *C. J. S. Appeal and Error,* 588, 589, sec. 295. It is true that the court in *Martin Fert Co. v. Thomas & Co.,* 135 Md. 633, 639, 109 A. 458, treated the overruling of what appears to be a general objection to such a question as a non reversible error, but it cannot be presumed that it intended to modify the rule that an objection to a question on the ground that it assumes an unproved fact must be made when it is asked and on that very ground, and to place upon trial courts the impossible burden of analyzing every question to which there is a general objection and comparing it with all the evidence to see whether its predicate has been proved.

The second exception lacks substance. The appellant

Holler had already testified that he had seen the Stevens automobile from the "moment it had pulled out until the accident occurred," and that when he first noticed the Stevens car "it was about eight cars to my right pulling out." The witness was then cross-examined, and on re-direct was asked "how far away was the Stevens car when you first knew that he was going to strike your car?" The refusal of the court to allow that question is the subject of the second exception. There was no error in the ruling, (1) because it was not proper re-direct examination, (2) because it had once been substantially answered, (3) because it assumed a fact not proved, which would have justified its refusal, although, for reasons stated above, that objection would not have been open to the appellee had it been allowed, since he did not object to it on that ground, and (4) because the allowance or refusal of the question on re-direct was within the discretion of the trial court.

The exceptions Nos. 3 and 4, relating to the rulings on the prayers offered by the plaintiff and Holler, were not pressed in this court and may be disregarded.

The defendant Holler offered eleven prayers. Of them his A, B, C, D prayers, which in one form or another were offered as demurrers to the evidence, were refused. His E prayer, offered as a variance prayer, was refused. His F prayer, a jury prayer, was also refused, and his G, H, I, J, and K prayers, jury prayers, were all granted. The refusal of his A, B, C, D, E, and F prayers, the subject of the fifth exception, requires a review of the evidence tending to support the plaintiff's claim, since the first three of those prayers submit his contention that there was no evidence in the case legally sufficient to permit a recovery. His D prayer was too general in form to submit any issue of law, and will not be considered.

There was in the case evidence tending to show facts which in the following narrative are assumed to be true: The McMullen Highway running southwesterly from Cumberland, passes the Celanese Plant and continues

through Cresaptown in the direction of Keyser, West Virginia. The plant is located on the south side of the road. The road itself in front of the plant is thirty feet wide, having a nineteen foot macadam center strip, and a sixty-six inch concrete shoulder on either side. On the plant side of the road, the south side, there is an open unpaved space between the side of the shoulder and a fence, about twelve feet six inches wide, and on the opposite, the north side, a similar space between the northern shoulder and a fence on that side of the road. The Celanese Corporation is an industrial manufacturing company, employing a large number of persons who work in shifts. Sarah V. Lowery, then about thirty-one years of age, unmarried and residing in Cumberland, was on April 6th, 1937, one of twenty-five hundred persons who were employed on the shift which worked from three o'clock in the afternoon until eleven o'clock at night.

Many of the employees lived in Cumberland, in Cresaptown, and in other places in the surrounding country at some distance from the plant. Buses, hiring cars, and private automobiles were employed to furnish them transportation to and from their homes. These automobiles were customarily parked, facing the road at a slight angle, in the open space between the road and the fence on each side of the road. From their parked positions the cars would pull out into the highway and proceed either towards Cumberland or towards Cresaptown. That was done without any definite plan or order, so that cars parked on the same side might proceed in either direction. Speaking of that custom Gilbert Garlitz, engaged in the business of carrying passengers for hire to and from the plant, testified: "On that night cars were parked all around on the right side too, two lanes of them facing toward Cumberland, on the right side. After they had their loads (passengers), they would pull out and go in both directions. The ones on my side more than likely would come to Cumberland."

When the shifts change, with so many employees beginning and stopping work, there is naturally much

movement and confusion in the road in front of the plant as the employees enter and leave.

On the night of April 6th, 1937, the road immediately in front of the plant was thronged with pedestrians; automobiles were pulling out from their places in the parking lines; on the north side of the road, facing Cresaptown, two buses were parked on the road; and on the side facing the road about one hundred cars were parked; on the other side facing Cumberland many other cars were standing, either facing Cumberland or facing the highway.

Into that scene of confusion the appellee entered on her way from the factory to an automobile parked on the north side of the highway, in which she expected to be driven to her home in Cumberland. In obedience to a signal from a traffic officer, she crossed to the north side of the road and walked over along the concrete shoulder towards Cumberland, facing traffic. After she had proceeded a distance equal to the width of about twenty cars, an automobile driven by Holler suddenly and without warning left its place in the parking line on the north side of the road, grazed her leg with its running board, and stopped in such a position as to block her further progress over and along the concrete shoulder. She said to the driver: "Where do you think you are going?" While she was still facing the Holler car, an automobile driven by Stevens on the wrong side of the road in the direction of Cumberland, coming from behind her, struck her and drove her against the Holler car, and inflicted upon her serious, painful, and permanent injuries.

The Stevens car had also been parked on the north side of the road. Stevens himself had for the first time, on the day of the accident, been given a license to drive an automobile in Maryland. As he left his parking position, he attempted to cross to the south or plant side of the road, to proceed towards Cumberland. For some reason not clearly explained, he turned back towards the north side of the road and was driving on that side when

he hit the Holler car. He said that on the plant side there were two lines of parked cars, off the road facing it, another partly on the road facing Cumberland, and that as he pulled into the road the traffic forced him on the wrong side of it.

Holler saw the course of the Stevens car from the time it left its position in the line, about seventy-five feet from him, until it collided with his car, but he remained stationary and mute until the collision occurred, with his car projecting into the highway at a right angle thereto, entirely across the concrete shoulder, and so as to bar the further progress of Miss Lowery, unless she walked around it into the path of the west bound traffic. Stevens in his course, before he reached the Holler car, struck Charles Pfeiffer and Hattie Collins, and when he collided with it he also struck Viola Miller, who was walking with Miss Lowery. He could have stopped his car in about four feet, and was proceeding at about ten miles per hour.

It also appeared that the concrete shoulders are generally used by pedestrians, obviously as a matter of necessity, because the open dirt spaces adjacent to the shoulders were occupied by parked cars, and the moving traffic made it extremely hazardous to walk on the macadam.

The important question in the case is whether those facts, and such natural and legitimate inferences as they permit, are legally sufficient to support a finding that Holler was guilty of negligence, which was a proximate cause of the injuries of which the appellee complains.

The first inquiry is whether they are legally sufficient to support a finding of negligence. Negligence has been defined as "any conduct, except conduct recklessly disregardful of an interest of others, which falls below the standard established by law for the protection of others against unreasonable risk of harm." *A. L. Inst. Restatement of Torts*, sec. 282. Complementing that statement, this should be read:

"The actor should recognize that his conduct involves

a risk of causing an invasion of another's interest, if a person,

"(a) possessing such perception of the surrounding circumstances as a reasonable man would have, or such superior perception as the actor himself has, and

"(b) possessing such knowledge of other pertinent matters as a reasonable man would have or such superior knowledge as the actor himself has, and

"(c) correlating such perception and knowledge with reasonable intelligence and judgment would infer that the act creates an appreciable chance of causing such invasion."

It does not exist apart from the facts and circumstances upon which it is predicated. *Baltimore, C. & A. R. Co. v. Turner,* 152 Md. 216, 228, 136 A. 609; *Dickey v. Hochschild, Kohn & Co.,* 157 Md. 448, 450, 146 A. 282; *Schell v. United Rys. & El. Co.,* 144 Md. 527, 531, 125 A. 158. It necessarily involves the breach of some duty owed by the defendant to the plaintiff (*Philadelphia, W. & B. R. Co. v. Kerr,* 25 Md. 521, 45 *C. J.,* 632), and is inconsistent with the exercise of ordinary care. 45 *C. J.* 624 *et seq.* "Ordinary care" is also relative, and varies with the nature of the facts and circumstances to which the term is applied. (*Dickey v. Hochschild, Kohn & Co., supra; Merrifield v. C. Hoffberger Co.,* 147 Md. 134, 127 A. 500) and the degree of vigilance and circumspection required to constitute ordinary care must be proportioned to the harm which may result from the failure of a tortfeasor to so order his conduct and the operation of agencies under his control as to avoid injury to others. *Ibid.*

So, as stated in *Taxicab Co. v. Emanuel,* 125 Md. 246, 93 A. 807, cited in *Merrifield v. Hoffberger, supra* (page 501): "The act relied on to establish, as a matter of law, the existence of contributory negligence must be distinct, prominent, and decisive, and one about which ordinary minds would not differ in declaring it to be negligent. Where the nature and atributes of an act relied on to show negligence contributing to an injury

sustained can only be determined correctly by considering all the attending and surrounding circumstances of the transaction, it falls within the province of the jury to pass upon and characterize it, and it is not for the court to determine its quality as matter of law." *Balto. & O. R. Co. v. Hendricks,* 104 Md. 76, 79, 64 A. 304; *McCarthy v. Clark,* 115 Md. 454, 468, 81 A. 12; *Nat. Life Ins. Co. v. Fleming,* 127 Md. 179, 185, 96 A. 281;. *Baker v. Md. Coal Co.,* 84 Md. 19, 27, 35 A. 10; *Waltring v. James,* 136 Md. 406, 407, 111 A. 125.

Public highways are for the use of all and the rights of all engaged in the lawful use thereof, unless otherwise provided by statute, are equal and reciprocal, the pedestrian and the motorist, each owes to the other the duty of exercising reasonable care to avoid interference with the right of the other to use the highway in safety, and each is answerable to the other for harm caused by a breach of that duty.

Because of the nature of the instrumentality which he controls, and the difference in the consequences incident to a breach of that duty by a motorist and a pedestrian respectively, ordinary care requires a motorist to exercise a higher degree of diligence and caution to avoid a collision with a pedestrian than it would require of a pedestrian, under similar circumstances, to avoid collision with an automobile. *Lashley v. Dawson,* 162 Md. 549, 160 A. 738; *Berry on Automobiles,* secs. 336, 337; *Blashfield Cyc. Auto. Law,* (Perm. Ed.) secs. 3, 4; *Minor v. Stevens,* 65 Wash. 423, 118 P. 313; 67 *A. L. R.* 97; 93 *A. L. R.* 551; 5 Am. Jur. 608.

In this case the appellant had before his eyes a public highway crowded with pedestrians and vehicular traffic, he must have seen pedestrians moving along the concrete shoulders which formed the sides of the road to reach their automobiles, and he must have seen, too, automobiles moving, some in regular, others in erratic courses, proceeding in opposite directions. He should have anticipated that in that state of confusion automobiles might be driven on the wrong side of the street

so as to endanger pedestrians who were lawfully and in the exercise of reasonable care walking there. He must have known that pedestrians walking along the shoulder had on one side a line of parked automobiles and on the other the macadam roadway where the vehicular traffic was heaviest.

Under those circumstances, with no warning of any kind, he drove his automobile directly in front of the appellee, and so near to her that its running board struck her leg, and its fender scraped the leg of a companion walking with her, and then it stopped so as to completely bar her progress over the concrete shoulder. He saw the automobile which struck her from the time it started to move until it collided with his car, he must have seen that if it continued its course it would strike the appellee and crush her against his car, and that the danger was one that he himself had caused, he had time to back before the collision so as to give her an opportunity to escape, for he testified: "But you could have backed up before he reached you very readily? A. If I knew he was going to keep coming and hit me, I could have, but I didn't have time to look back. Q. So that you did have time to back up, but you didn't back up? A. Yes." He knew that her back was to the Stevens car and that she could not see it because she was speaking to him, but he neither moved his own car nor warned her of the approach of the other.

Assuming that, even if his car had not blocked the shoulder, the Stevens car would still have struck the appellee, it cannot be assumed that proceeding so slowly it could have inflicted injuries as severe as those which appellee suffered when it crushed her against a heavy, unyielding object, such as the Holler car. So that the conduct of Holler and the conduct of Stevens, the one as an anvil, the other as a hammer, concurred to cause the injuries of which the appellee complains.

Whether under those circumstances his conduct constituted actionable negligence was a jury question, not a question of law.

Nor can it be said, as a matter of law, that Holler's negligence did not proximately contribute to the happening of the accident. If her progress had not been stopped, Miss Lowery may not have been where she was when the Stevens car struck her, or, if her attention had not been concentrated on the Holler car when it struck her, she might have discovered the approach of the Stevens car, or, if she had continued her course, the Stevens car may have altered its course before it struck her, or, if it be assumed that the Stevens car would have struck her in any event, it may fairly be inferred that her injuries would not have been so severe had she not been crushed against the Holler car.

There is no mystery in the doctrine of proximate cause. It rests upon common sense rather than legal formula. Expressed in the simplest terms, it means that negligence is not actionable unless it, without the intervention of any independent factor, causes the harm complained of. It involves of course the idea of continuity, that the negligent act continuously extends through every event, fact, act, and occurrence related to the tortious conduct of the defendant, and is itself the logical and natural cause of the injury complained of. In the statement of the doctrine an intervening cause means not a concurrent and contributing cause, but a superseding cause, which is itself the natural and logical cause of the harm.

Those principles are implicit in these statements found in *A. L. Inst. Restatement of Torts*, secs. 431 and 432.

Sec. 431—"The actor's negligent conduct is a legal cause of harm to another if

"(a) his conduct is a substantial factor in bringing about the harm, and

"(b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm."

Sec. 432—"(1) Except as stated in Subsection (2), the actor's negligent conduct is not a substantial factor in

bringing about harm to another if it would have been sustained even if the actor had not been negligent.

"(2) If two forces are actively operating, one because of the actor's negligence, the other not because of any misconduct on his part, and each of itself· is sufficient to bring about harm to another, the actor's negligence may be held by the jury to be a substantial factor in bringing it about." See also sections 441-453, *Ibid.*

The doctrine was also stated in *State v. Hecht Company*, 165 Md. 415, 422, 169 A. 311, 313, where it was said:. "If the negligent acts of two or more persons, all being culpable and responsible in law for their acts, do not concur in point of time, and the negligence of one only exposes the injured person to risk of injury in case the other should also be negligent, the liability of the person first in fault will depend upon the question whether the negligent act of the other was one which a man of ordinary experience and sagacity, acquainted with all the circumstances, could reasonably anticipate or not. If such a person could have anticipated that the intervening act of negligence might, in a natural and ordinary sequence, follow, the original act of negligence, the person first in fault is not released from liability by reason of the intervening negligence of another." It was before this court again in *Lashley v. Dawson,* 162 Md. 549, 160 A. 738, in *Shafer v. State,* 171 Md. 506, 189 A. 273, and in *State v. Sammon,* 171 Md. 178, 189 A. 265. And in view of the conclusions announced in those cases, and the analyses of the cases upon which those conclusions rest, further discussion of the doctrine here is not required.

Applying the principles announced in those cases to the facts stated above, it cannot be said as a matter of law that the conduct of the appellant in blocking the appellee's progress over a public highway did not proximately contribute to the injuries of which she complains. There was therefore no error in the refusal of appellant's demurrer prayers. The ruling as to his variance prayer was not argued in this court, and the objection

to it will be treated as abandoned, as will the objection to the refusal of appellant's F prayer. Finding no error in the rulings of the trial court submitted to this court for review, the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*