HARVEY L. HOLLER *v.* VIOLA E. MILLER.

[No. 15, October Term, 1939.]

*Decided November 29th, 1939.*

The cause was argued before BOND, C. J., OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, JOHNSON, and DELAPLAINE, JJ.

*George Henderson,* with whom was *William M. Storm* on the brief, for the appellant.

*Lewis M. Wilson* and *W. Earle Cobey,* with whom was *Walter E. Sinn* on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

This is a second suit arising from the accident described in the report of *Holler v. Lowery,* 175 Md. 149, 200 A. 353, but the evidence produced is not the same; no witnesses testified for the defendants; and the legal questions differ to some extent.

As appears from the report of the *Lowery* case, the plaintiff in this one, Miss Miller, was beside Miss Lowery as the two, with a third, came from the Celanese factory at night, were stopped by Holler's car as it drove out from its parking space and up on the shoulder of the road, and were struck up against that car by another car, on its wrong side of the road, driven by Stevens. For injuries to Miss Miller a judgment has been recovered against both Holler and Stevens, and Holler alone has appealed.

In the former case evidence of negligence on Holler's part, sufficient for consideration of the jury, was found in his own testimony that he stood, blocking the young women, although he could have backed his car out of the way of danger after he saw the Stevens car approaching. And this testimony, or what were thought to be essential parts of it, the present plaintiff sought to introduce in testimony on her behalf as admissions of Holler. The court stenographer officiating at Miss Lowery's trial, called as a witness for Miss Miller, testified that his original stenographic notes of testimony at that former trial had been destroyed, but he had the transcript which he made of them. And the plaintiff asked whether, after refreshing his recollection from that transcript, he could say that the defendant Holler testified as quoted. Looking at his transcript, the stenographer repeated the testimony sought. This was objected to, first, because the disconnected answers did not give the whole of Holler's testimony on the fact to be proved; and on its appearing that the witness was not refreshing his recollection, but reading the transcript, which he knew to be a true extension of his notes, a motion to strike out all the quoted answers was made because the testimony did not conform to the offer of refreshed recollection. The witness stated explicitly that he did not recall the former questions in the ordinary sense of the word, but knew they were asked because they appeared in his record. The court overruled the objections and the motion, and this action is the subject of a number of exceptions pressed on appeal.

It is not disputed that relevant admissions of a party made in a former proceeding may be placed in evidence. *Merchants' Bank v. Marine Bank,* 3 Gill 96, 124; *Nicholson v. Snyder,* 97 Md. 415, 55 A. 484; *Cady v. Doxtator,* 193 Mich. 170, 159 N. W. 151; *Omaha v. Jensen,* 35 Neb. 68, 73, 52 N. W. 833. But on the authority of *Baltimore v. State, use of Biggs,* 132 Md. 113, 120, 103 A. 426, it is denied that they may be introduced directly by a stenographer's transcript of testimony during the course of

which the admissions were made. In that case, however, the court held only that an attorney could not merely read what he offered as a transcript. And in the case of *Herrick v. Swomley,* 56 Md. 439, 462, the notes of a Pennsylvania stenographer, certified under the Act of Congress, were excluded as not a part of the record which could be introduced in this state without supporting testimony. When, as here, the stenographer himself, by his testimony in court, verifies the transcript as an authentic extension of his notes, the case is different. In addition to the assurance of authenticity afforded by his oath, there is official character in the transcript because the stenographer is appointed by the court, under the authority of a statute, for the very purpose of preserving testimony. Code, Pub. Loc. Laws, art. 11, sec. 87. It is settled that he may testify from his notes, without reference to independent recollection. *Baltimore v. State, use of Biggs, supra.* And his transcript is only a more convenient form of testimony from his notes. *Cady v. Doxtator,* 193 Mich. 170, 159 N. W. 151; *Omaha v. Jensen,* 35 Neb. 68, 73, 52 N. W. 833. Therefore the fact that the stenographer in this instance had no independent recollection, and was in reality introducing the transcript in evidence, did not render it inadmissible as supposed. The motion to strike it out on that ground was properly overruled, and the admissions are properly in the case unless subject to some other objection.

It is true that when part of a statement in any written form is thus offered against a party, it must be accompanied by all other relevant parts. All parts possibly tending to qualify the admissions or to present the whole effect of what was said or written on that point, must be given to the jury. *Reynolds v. Manning,* 15 Md. 510, 528; *Askin v. Moulton,* 149 Md. 140, 146, 131 A. 82; *State for Use of Balderston v. Hopkins,* 173 Md. 321, 325, 196 A. 91; *Wigmore, Evidence* (2nd Ed.), secs. 1048 etc., 1051. For it is to the sum total that the speaker has committed himself. On the defendants' objections in this instance the court could not well, as a practical matter,

have required the reading of the other parts demanded unless they were pointed out, and in fact Holler's attorney himself did introduce other parts of his testimony, presumably all other parts he wished. On the record as it is, this court finds no reversible error in the exceptions considered.

The testimony of the plaintiff and other witnesses on her behalf was that as she, Miss Lowery, and another, afoot, reached the parking place of Holler's car, it came out suddenly, with its lights, but without sounding its horn, and as it stopped struck Miss Lowery and Miss Miller on the legs, so that they might have fallen had they not balanced themselves against the car. No injury is attributed to that contact. They called a warning to Holler. And at almost precisely that moment, the Stevens car, coming on the opposite side, its right side, of the road, met a car coming out of the parking space on that side, and made a sudden swerve over to its left and struck Miss Lowery and Miss Miller up against Holler's car. Miss Miller said Holler stopped, and just that quick the other car hit. Miss Lowery testified that when Holler pulled out and struck her on the leg, she said to him: "Where do you think you are going," and that was all she knew. A police officer testified to a quick swerve by the Stevens car. A Mrs. Fogle, who was in a car parked second beyond, waiting for the plaintiff and her companions, said she saw them coming, looked down to turn the ignition on, and that quick the accident occurred and was over. She added, however, that the third of the three who were walking together was then getting into the rear of her (Mrs. Fogle's) car, and this seems to mean that after the approach had been blocked there had been an interval of time sufficient for her walking across and around the intervening parked car. Still another witness testified that the Stevens car was about two car lengths from the Holler car, when crowded over into its left-hand lane, and something happened very suddenly. The witness said Stevens had nowhere else to go. It was in this state of proof that Holler's statements at the previous trial were introduced.

The statements were that he first saw the young women about eight feet away, and the Stevens car was coming at a rate of about ten or twelve miles an hour, and that it could have been stopped in less than four feet. He could not have backed his own car into the parking space again before it reached him, because it was not his habit to back without seeing where he was backing; but he could have done it very readily if he had thought the other car was going to hit him, but he didn't think so. He had time to back but didn't do so. And on cross-examination he said he had pulled out and stopped to get a view of the highway in both directions. He did not know any reason why the Stevens car did not stop as it could, easily, in four feet. He did not see anything to prevent Stevens' car from passing in front of him, and he could not have done anything to avoid the accident after he saw what was going to happen, or after he saw there was real danger; he was expecting the Stevens car to stop; it was too close. These answers, all taken together, then, constitute the admission of Holler.

A comparison of the testimony with that produced in *Holler v. Lowery,* and narrated in the opinion filed in that case, shows a difference in the omission now of any testimony that Holler saw the Stevens car coming from the time it left its position in the parking line, and had the opportunity this would have given him for anticipating danger from it. No more could be inferred from the quoted statements than that Holler first saw the Stevens car when he saw the young women, eight feet away. And then Stevens could have stopped in four feet. There is now no reference to Stevens' striking others in his approach. And there is an omission of evidence of frequency of turning and passing on both sides when the shift of employees at that hour crowded the roadway with cars and pedestrians. The plaintiff, however, offered to prove that this was a common occurrence and thus to afford ground for an inference that the turn of Stevens' car was to have been anticipated, but the trial court, on objection, excluded the proof. An excep-

tion to the ruling was noted by the plaintiff. The court could not now judge the legal sufficiency of the offered evidence, but the dangers to be anticipated by the defendant would determine the requirements of care on his part, and this court, differing in opinion from the trial court, concludes that the evidence should have been received. A question of legal sufficiency of the evidence that was received, that is, without the testimony offered but excluded as just stated, need not be considered now, because the plaintiff would be entitled to an opportunity to produce the testimony on the retrial, which is ordered on another ground. She could in no event be denied recovery without that opportunity. Code, art. 5, sec. 24. And given the opportunity, the whole evidence she might then submit to any test of legal sufficiency might differ materially.

Objection is made that in one of the instructions to the jury, granted on a prayer of the plaintiff, error was committed in describing the contact of the two automobiles as a collision. This is thought to imply that both cars were, contrary to the fact, in motion. But that construction of the word is not necessary, and the uniform testimony to the contrary left no possibility of the jury's supposing that Holler's car was in motion then.

The trial court declined to instruct the jury on a prayer by the defendant that, notwithstanding Holler's stopping on and over the shoulder of the road as described, the verdict should nevertheless be in his favor unless the jury should find from the evidence that "he did or in the exercise of reasonable care under all the circumstances should have anticipated" that Stevens or other drivers might drive "on the extreme left side of the public highway so as to endanger the plaintiff or other pedestrians walking on said shoulder." The court, differing with the trial court, is of opinion that the instruction should have been granted. As has been recited, witnesses described the accident as a very quick, unexpected, occurrence, some of them allowing no interval of time for action by Holler to avoid it, and Holler's admissions contained a

statement that he did not anticipate being struck, and failed to see why Stevens did not stop or pass in front. There was evidence, therefore, to support a finding by the jury that in the exercise of ordinary care he would not have anticipated being struck. And as shown in the opinion in the *Lowery* case, 175 Md. 149, 162, 200 A. 353, the fact has a decisive influence on the question of negligence. A man is required to act only as the circumstances before him may dictate, and is not liable if he does so. There was error, the court concludes, in the refusal of the instruction.

*Judgment reversed, and a new trial awarded, with costs.*