# THE MARTIN FERTILIZER COMPANY

*vs.*

## THOMAS & COMPANY.

*Transfer to Other Tribunal—Amendment of Pleadings—Non-Delivery of Merchandise—Evidence—Examination of Witnesses—Instructions—Assumption of Facts—Harmless Error.*

Code, Art. 75, Sec. 115, authorizing the removal, by order of court, of a case brought before the wrong tribunal, to the proper court or docket, and providing that thereupon the pleadings shall be amended to "conform the case to the course of the court to which the same shall have been removed," does not preclude further amendments of the pleadings in that court.      p. 638

In an action for the non-delivery of merchandise as agreed, the fact that a question asked of plaintiff's witness, as to how he arrived at a figure as to plaintiff's loss, assumed that there was a loss, is not cause for reversal, when the fact of loss was subsequently proven.      p. 639

A question as to the conduct of plaintiff in regard to a previous contract between the parties, which was not involved in the case, was properly excluded.      p. 639

The trial court has control of matters concerned with the examination and re-examination of witnesses, and the order of taking testimony and departure from strict rules are matters very largely in its discretion.      p. 640

The court may properly cross-examine on matters admissible in evidence as to which it feels that it has not sufficient information.      p. 640

In an action for the non-delivery of fertilizer sold, where the defense was, not that defendant was unable to perform its contract, but that it was released by plaintiff's failure to make a payment as stipulated, it was proper to exclude a question asked by defendant as to whether the Government requisitioned large quantities of fertilizer materials.      p. 640

A question in chief asked of plaintiff's witness, whether he knew the kind of fertilizer that would have occasioned the least amount of damage to the defendant, to which the witness answered "Yes," was not prejudicial to defendant.          p. 640

Exclusion of a question asked of a witness, *held* not ground for reversal, the fact involved in the question having been proved by at least one witness, and not controverted.          p. 640

In an action for non-delivery of fertilizer as agreed, where defendant's contention was that it was released from the contract by reason of plaintiff's failure to pay a certain sum on a date named, instructions requested by defendant were properly refused, when they ignored plaintiff's testimony as to a breach by defendant prior to that date, and as to a modified agreement of later date, by which the time of payment was changed.

p. 644

In an action for the non-delivery of fertilizer as agreed, an instruction that, if the jury found certain facts, they should return a verdict for plaintiff, unless they further found that the discontinuance of deliveries was justified by plaintiff's non-payment for fertilizer previously delivered, if open to the objection that the latter clause submitted a question of law to the jury, this was not ground for reversal, it not being made the subject of special exception, and it not injuring defendant, since such clause could, under the testimony, have referred only to conflicting evidence as to whether the original provision for payment for such previous deliveries remained unmodified.     p. 645

A prayer for an instruction offered by plaintiff should not assume a fact as established simply because the evidence as to such fact is not contradicted, the jury having under ordinary circumstances the right to disbelieve testimony even though uncontradicted.          p. 646

That an instruction granted on plaintiff's request assumed facts as established is not ground for reversal where the facts assumed were not only undisputed, but were of such a character that, if untrue, the evidence to disprove them was at hand in the possession of defendant's witnesses present and testifying in the case.          p. 646

That an instruction as to the measure of damages, in an action for non-delivery of merchandise under a contract of sale,

assumed a certain figure per ton as being the difference between the contract price and the market price, was not prejudicial to defendant, when the figure assumed was the lowest which could be found on the evidence in the event of a verdict for plaintiff.

p. 646

*Decided January 16th, 1920.*

Appeal from the Circuit Court for Frederick County (URNER, C. J., and WORTHINGTON, J.).

The cause was argued before BOYD, C. J., BURKE, THOMAS, PATTISON, STOCKBRIDGE and ADKINS, JJ.

*Milton G. Urner, Jr.,* and *Albert S. Brown,* for the appellant.

*Leo Weinberg* and *Robert B. Peter,* for the appellee.

ADKINS, J., delivered the opinion of the Court.

On December 18th, 1916, appellant and appellee entered in the following contract:

"Special Sales Contract.

"Philadelphia, Pa., December 18, 1916.

"Sold to Thomas & Co., P. O., Frederick, County Frederick, State Md., and bought from the Martin Fertilizer Co., Philadelphia, Pa., the following named brands of fertilizer or fertilizer material, manufactured at Baltimore, Md., subject to the below named quotations and conditions:" (Here follows a table of brands, with formulas and prices.)

"Prices quoted are f. o. b. Baltimore in seller's bags of 167 pounds.

"Shipments: The above goods quoted are to be shipped from factory year of 1917.

"Settlement: To be made in cash; see above 190, subject to .... discount.

"Conditions: The buyer has the privilege of substituting other brands or analysis, provided instructions

are received within five (5 days) of the specified date of shipment.

"But in no case will the tonnage be reduced.

"Executed in duplicate.

"Accepted:

"The D. B. Martin Company,

"J. F. McCormick, Salesman.

"Accepted:

".................."

Across the contract are written the following words:

"This contract calls for 1,500 tons, with the privilege of increasing to 3,000 upon buyer giving sellers notice on or before July 1, 1917, goods to be taken out during 1917.

"Goods shipped before July 1, to be paid for July 1, in cash (net).

"Goods shipped after July 1, to be paid for January 1, 1918, in cash (net).

"Any payments made previous to these dates are subject to a discount of 6% per annum."

In March, 1917, the appellee began ordering goods under this contract and received about 170 tons prior to June 1st, when it was informed by appellant by letter of that date that it could not at that time furnish certain potash and ammoniated goods named in the contract.

There appears to have been considerable written, telegraphic and oral communication between the parties about this time in reference to the holding up of orders.

On June 16th, 1917, appellee by letter exercised its option to take the additional 1,500 tons making 3,000 in all.

On the 19th day of July, 1917, appellee filed in the Circuit Court for Frederick County a bill for specific performance and for injunction to restrain appellant from disposing of fertilizer and fertilizer material to the extent of the quantity of 3,000 tons agreed to be furnished to the plaintiff.

On July 25, 1917, the Court passed an order requiring appellant to show cause on or before August 9, 1917, why an injunction should not be granted.

Further proceedings in this case were suspended by reason of some new arrangement between the parties by which additional shipments were made to appellee.

Subsequently a dispute arose between the parties as to whether under the supplemental contract the payment required by the original contract to be made on July 1, 1917, was still required to be made on that date, and the above proceedings were revived. On September 7th, appearance was entered for the appellant, the defendant below, and on September 25th, a demurrer filed to the bill of complaint. On October 30th, 1917, an amended bill of complaint was filed which was demurred to on November 16th. On February 24th, 1919, order of Court was filed sustaining demurrer and directing that the case be transferred to the trial docket on the law side of the Court for trial.

On March 3rd, 1919, appellee, the plaintiff below, filed its declaration in which were two special counts on the contract of December 18, 1916, and the common counts, said contract being filed as an exhibit. General issue pleas were filed and a demand for a bill of particulars as to plaintiff's claim under the common counts, whereupon pleas were withdrawn by leave of Court and a demurrer entered to the declaration which was overruled, and the pleas were then refiled. At the conclusion of plaintiff's testimony it moved to withdraw the original declaration and substitute an amended declaration. Defendant objected, but the Court overruled the objection and permitted the amended declaration to be filed, in which the contract of December 18th, 1916, is set out and a breach thereof charged in one count, and in a second count the said original contract is set out and a clause added showing a modification thereof as follows:

"And for that, on the 19th day of July, 1917, said contract was by agreement of the plaintiff and the defendant verbally modified as follows, to wit: that the

defendant was to furnish 2,140 tons of fertilizer and fertilizer materials at the prices stipulated in the original contract, and the residue at an advanced price of thirty cents per unit for available phosphoric acid, all shipments to be made sight draft, bill of lading attached (in 200-pound bags), with a discount equivalent to 6% per annum, from day of shipment to January 1st, 1918; and for that although the plaintiff often requested the defendant to deliver the fertilizer and fertilizer materials, in accordance with the said modified agreement, yet the defendant failed and refused to deliver a large portion, to wit, 2,258 and 2/10 tons, to the great loss, injury and damage of the plaintiff."

The overruling of defendant's objection to the amendment of the declaration is the subject of the ninth bill of exception and that can conveniently be considered at this point.

It is strongly urged by counsel for appellant that, under Section 115 of Article 75 of the Code, after amendment of the pleadings to "conform the case to the course of the court to which the same shall have been removed" as provided by the statute, no further amendment can be made, and an analogy is sought to be drawn to the case of issues sent from the Orphans' Court to a Court of Law for trial. But the analogy obviously fails in that in the first instance the *case* is removed and the Court to which it is removed acquires jurisdiction for all purposes as if the suit had originated in that Court, whereas where issues are sent by the Orphans' Court to a Court of Law the former does not lose jurisdiction of the subject matter of the suit, and the only jurisdiction acquired by the latter is to answer the questions submitted, and to return the answers to the Orphans' Court so that judgment may be entered by it.

In *Safe Deposit Co.* v. *Cahn,* 102 Md. 542, this Court said, referring to said statute, "the statute shows it is the declared policy of the law that where it is apparent the plaintiff is entitled to some remedy, the mere fact that he has in-

voked the aid of the wrong tribunal shall not be a sufficient cause for the dismissal of the bill of complaint." This means, as we understand it, that the statute operates (where the discretion given the trial judge is exercised) to start the litigants afresh in the right Court with all the privileges they would have had if suit had been originally instituted in that Court.

We have no doubt of the correctness of the ruling of the Court on this exception. A verdict was rendered for the plaintiff on which judgment was entered from which the appeal was taken. In the course of the trial a number of exceptions were reserved to the rulings of the Court on the testimony, which we will pass upon in order.

Referring to 683.9 tons of fertilizer which appellee did not sell because of the refusal of appellant to deliver, the manager of appellee was asked: "How did you arrive at the loss on these, the 683.9 tons?" The overruling by the Court to an objection to this question constitutes the first bill of exception. The witness answered that question as follows: "We took the loss on the 683.9 tons on the average basis of the actual fertilizer delivered, eliminating the 16% rock because of the fact that there was only 200 tons specified in the contract, which made a loss of 6.32¾ per ton based on the market price of the goods."

It is objected to the question that it assumed there was a loss. Probably this question should have been preceded by a preliminary one, but as the fact of the loss was subsequently proved no harm was done by it, and we find no reversible error in this ruling. The third exception is to the refusal of the Court to permit a question in reference to the conduct of the appellee in regard to previous contract between the parties. As that contract was not involved in this case the Court properly sustained an objection to the question.

The third, fourth and fifth exceptions are to questions asked a witness, while under cross-examination, by the Court on the subject of damages sustained by the appellee. It is

objected that this subject had been thoroughly covered in chief, and the Court should not have permitted counsel to rehash the matter on re-examination. This overlooks the fact that the trial Court has control of matters of this sort; and that the order of taking the testimony and departure from strict rules are matters very largely in its discretion. Besides the questions objected to could have been properly asked by counsel for appellant on cross-examination even if they had already been asked in chief, and there is no reason why the Court should not cross-examine on matters admissible in evidence as to which it feels it has not sufficient information. The objections were properly overruled.

The next exception was abandoned.

The seventh relates to the following question in chief: "Do you know the kind of fertilizer that would have occasioned the least amount of damage to the defendant?" As the answer was "Yes, sir," it is not apparent how anybody was hurt by it, and this exception was not seriously pressed.

The eighth is to the Court's refusal on objection to permit a witness for appellee on cross-examination to answer the following question: "Didn't the Government requisition a great deal of material that was used in the manufacture of fertilizer?"

The objection to this question was properly sustained, if for no other reason, because the appellant was not defending this suit on the ground that it was unable to perform its contract, but solely on the ground that it was let out because of an alleged breach by the appellee in failing to make the payment on July 1st required, as appellant contended, by the contract. In any event the fact in this question was proved by at least one other witness, and not controverted.

The remaining exception is to the granting of plaintiff's first and fourth prayers and to the rejection of defendant's eighth prayer, and to the substitution of the prayer prepared by the Court marked "defendant's ninth prayer."

These prayers were as follows:

*Plaintiff's First Prayer*—The plaintiff prays the Court to instruct the jury that if they find from the evidence that the contract set out in the amended declaration was signed by the plaintiff and accepted by the defendant, and shall further find that the contract was afterwards modified by agreement of the parties, and that the defendant was requested by the plaintiff to furnish fertilizers and fertilizer materials under the modified agreement (if they find the agreement was modified, as aforesaid) and that the defendant failed and refused to furnish the fertilizers and fertilizer materials as requested to be furnished by the plaintiff, or any part thereof, in accordance with the terms of said modified agreement, then the verdict of the jury shall be for the plaintiff, unless the jury further find that the discontinuance of deliveries of fertilizer by the defendant to the plaintiff was justified by the non-payment of the price of the fertilizer delivered prior to July 1, 1917, amounting to $2,287.73. (*Granted.*)

*Plaintiff's Fourth Prayer*—The plaintiff prays the Court to instruct the jury that if they find for the plaintiff, then the plaintiff is entitled to recover damages, to the extent of the 1,361 5/10 tons, mentioned in the evidence, the difference between the prices set out in the original contract and the prices paid to Hubbard & Company, and, as to the remaining 896 7/10 tons, at the rate of $3.02 per ton being the difference between the contract price, as modified, and the market price of such fertilizer, with interest, in the discretion of the jury, from January 1st, 1918, on said amounts, less the sum of $2,287.73 admitted to be due the defendant, with interest thereon in their discretion. (*Granted.*)

And the defendant offered eight prayers, as follows:

*Defendant's First Prayer*—The defendant prays the Court to instruct the jury that the plaintiff has not offered any evidence legally sufficient to entitle it to recover in this case, and the verdict of the jury must be for the defendant.

(*Refused at close of plaintiff's case—refused at close of whole case.*)

*Defendant's Second Prayer*—The defendant prays the Court to instruct the jury that under the pleadings in this case the plaintiff has not offered any evidence legally sufficient to entitle it to recover, and the verdict of the jury must be for the defendant. (*Refused at close of plaintiff's case—refused at close of whole case.*)

*Defendant's Third Prayer*—The defendant prays the Court to instruct the jury that if the jury find that under the terms of the contract sued on and offered in evidence the plaintiff was required to pay on July 1, 1917, in cash for goods shipped on its order by the defendant before said date, and shall further find that the defendant, under the said contract, did ship fertilizer on the order of the plaintiff before July 1, 1917, and that the plaintiff has not paid for the same, then the plaintiff is not entitled to recover in this case unless the jury shall further find that the plaintiff's failure to pay for the said fertilizer at the time stipulated as aforesaid was waived or condoned by the defendant; and the jury are further instructed that there is no evidence in this case legally sufficient to prove that the plaintiff's failure to pay for the said fertilizer at the time stipulated as aforesaid was waived or condoned by the defendant, and therefore the verdict of the jury must be for the defendant. (*Refused.*)

*Defendant's Fourth Prayer*—The defendant prays the Court to instruct the jury that if the jury find that under the terms of the contract sued on and offered in evidence the plaintiff was required to pay on July 1, 1917, in cash for goods shipped on its order by the defendant before said date, and shall further find that the defendant, under said contract did ship fertilizer on the order of the plaintiff before July 1, 1917, and that the plaintiff has not paid for the same, then the plaintiff is not entitled to recover in this case unless the jury shall further find that the plaintiff's failure

to pay for said fertilizer at the time stipulated as aforesaid was waived or condoned by the defendant. (*Refused.*)

*Defendant's Fifth Prayer*—The defendant prays the Court to instruct the jury that under the pleadings in this case the plaintiff is not entitled to recover, because it is shown by the evidence of the plaintiff that the plaintiff has not complied on its part with the terms of the contract sued on and offered in evidence, and there is no evidence in the case legally sufficient to prove, either, that such failure to comply on the part of the plaintiff was caused by any act or default on the part of the defendant with respect to said contract, or that the said failure of the plaintiff to comply therewith was condoned or waived by the defendant, and therefore the verdict of the jury must be for the defendant. (*Refused.*)

*Defendant's Sixth Prayer*—The defendant prays the Court to instruct the jury that under the pleadings the plaintiff is not entitled to recover in this case because, according to the terms of the contract sued on and offered in evidence by the plaintiff, the plaintiff was required to pay in cash on July 1, 1917, for goods shipped on its order by the defendant before said date, and it is shown by the plaintiff's evidence that the defendant did ship fertilizer on the order and at the request of the plaintiff before said 1st day of July, 1917, and that the plaintiff failed to pay therefor at the time and in the manner stipulated and agreed in said contract; and there is no evidence in the case legally sufficient to prove, either, that the said failure of the plaintiff to pay for the said fertilizer, as aforesaid, was caused by any act or default of the defendant with respect to the said contract, or that it was waived or condoned by the defendant, and therefore the verdict of the jury must be for the defendant. (*Refused.*)

*Defendant's Seventh Prayer*—The defendant prays the Court to instruct the jury that there is no legally sufficient evidence in this case to entitle the plaintiff to recover and the verdict of the jury must be for the defendant. (*Refused.*)

*Defendant's Eighth Prayer*—The defendant prays the Court to instruct the jury as a matter of law in order to entitle to recover, the plaintiff must show that the plaintiff has performed all of its part of the contract, or has been prevented from performing it by the defendant, or if broken by the plaintiff the defendant has condoned or waived said breach. (*Refused.*)

*Defendant's Ninth Prayer*—The defendant prays the Court to instruct the jury that if the jury shall find from the evidence that the plaintiff and defendant executed the contract sued upon, in which contract it was agreed that the plaintiff should pay in cash (net) on the first day of July, A. D. 1917, for all fertilizer shipped to the plaintiff or on its order to others before the said first day of July, A. D. 1917, and shall also find that the defendant did ship to the plaintiff or on its order to others fertilizer to the amount of $2,287.73 before the first day of July, A. D. 1917, and shall further find that the said contract was afterwards modified by agreement of the parties and that the said sum of $2,287.73 was not paid in accordance with said contract as so modified, if the jury shall so find, and that said non-payment was not condoned or waived by the defendant, then their verdict should be for the defendant. (*Granted.*)

We find no error in the rejection of defendant's prayers. The first, second, third, fifth and seventh entirely ignore plaintiff's testimony as to a breach by defendant prior to July 1st, 1917, and as to a modified agreement of later date, and were for that reason properly rejected. The fourth and eighth ignore plaintiff's testimony as to said breach and it is at least questionable whether they could have been properly granted. In any event the prayer substituted by the Court marked "Defendant's Ninth Prayer" fully covers the propositions contained in the fourth and eighth prayers so far as they are applicable to the facts in this case, and the defendant certainly has no reason to complain about the granting of that prayer.

The testimony, oral and written, is so voluminous that an attempt even to summarize it would unduly extend this opinion. It is sufficient to say that there is evidence in the case legally sufficient to enable the jury to find the following facts, viz:

(1) A breach of the contract by the defendant prior to July 1st, 1917.

(2) A modification of the contract after that date by which the payment originally required on July 1st, was waived until after the performance by defendant of its part of the contract, and by which plaintiff was required to pay a higher price per unit for phosphoric acid as to part of the tonnage and to pay cash for all goods shipped thereafter.

Plaintiff's testimony as to the breach by the defendant and as to the waiver of the provision for the July payment was contradicted by defendant's testimony. But that was a matter for the jury to decide, and the conflicting testimony could not be ignored by the instruction of the Court.

We find no reversible error in the granting of plaintiff's first and fourth prayers.

The first prayer is possibly open to the objection that in the latter part it submits a question of law to the jury. But this point was not raised by a special exception, and we are satisfied defendant was not injured. The qualification at the end of the prayer could only have referred, under the testimony, to the conflicting evidence as to whether or not the original provision, requiring payment on July 1st, remained unaffected by a subsequent agreement; and the prayer fairly submits that question to the jury.

As to the fourth prayer, which goes to the measure of damages, the form of it is certainly open to criticism, and if the facts found by the prayer, instead of being left to the jury to find, were facts at all in controversy in the case the ruling of the Court could not be sustained. But this prayer differs from that in *Pinkney* v. *Dambmann,* 72 Md. 173, in that the figures given here are the figures proved in reference to the

time and place of delivery under the contract; whereas in the *Dambmann case* the figures given, according to the evidence, represented the market price at a date different from the time and place of delivery, and this was the sole ground of the Court's criticism in that case. And it differs from the prayer in *Calvert Bank* v. *Katz*, 102 Md. 56, in that here the figures given were not disputed in the evidence, whereas in the *Katz case* the prayer told the jury that facts which were contested throughout the trial has been established as a verity by undisputed evidence. No doubt in the last mentioned case the rule was correctly applied, that a prayer for the plaintiff should not assume a fact as established simply because the evidence as to such fact is not contradicted, because the jury under ordinary circumstances have the right to disbelieve testimony even though uncontradicted. But it does not follow that a departure from this rule should be held to be a reversible error in a case, like the present, where the facts assumed to be true were not only undisputed, but were of such a character that if untrue the evidence to disprove them was at hand in the possession of defendant's witnesses present and testifying in the case. Under such circumstances if the finding of these facts had been left to the jury and their verdict had been based on a disregard of them, a new trial would properly have been granted by the trial Court.

We are satisfied that defendant suffered no injury from the technical defect in this prayer but was, on the contrary, benefited by it, as the rate fixed was the very lowest that could have been found on the evidence in the event of a verdict for the plaintiff.

*Judgment affirmed, with costs to appellee.*