PHIL J. CORPORATION *v.* MARKLE, ET. UX.

[No. 126, September Term, 1967.]

*Decided May 10, 1968.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, BARNES, McWILLIAMS and FINAN, JJ.

*Gerald Kunes,* for appellant.

*Thomas A. Farrington,* with whom were *Hal C. B. Clagett* and *Sasscer, Clagett, Powers & Channing,* on the brief, for appellees.

BARNES, J., delivered the opinion of the Court.

The appellant, Phil J. Corporation, tenant under a lease dated September 1, 1964, from the appellees George A. Markle and Holly Markle, his wife, landlords, of the property known as "Markle's Corner," challenges in this appeal a decree of the Circuit Court for Anne Arundel County (Sachse, J.), filed November 28, 1966, as amended on December 5, 1966, adjudging in a suit for declaratory and other relief that the septic system was adequate for the operation of the business of the tenant prior to January 15, 1965, and subsequent to February 15, 1965, that the tenant was entitled to possession of the leased premises on which the net rent due as of September 30, 1966, was $13,183.46 and granting leave to the tenant to remain in possession until, and to pay on or before, December 20, 1966, the net rental of $13,183.46 plus any rental which became due and was unpaid by December 20, 1966.

The lease of September 1, 1964, is a long one containing 20 separate paragraphs by which the landlords leased to the tenant Markle's Corner, located at the southeast corner of the intersection of Maryland Route No. 198 and Brock Bridge Road in the Fourth Election District of Anne Arundel County, containing 12,771 square feet of land, more or less, with the improvements, for a ten year period beginning September 1, 1964, and ending August 31, 1974, for a rental of $84,000 payable at the rate of $700 a month. Each monthly installment of rent "shall be and fall due and payable in advance on the first day of each and every calendar month throughout the term of this lease." There were provisions for a renewal term of five years commencing September 1, 1974, with a rental of $60,000 payable in monthly installments of $1,000, as well as an option provision for purchase at the end of the ten-year term at the fair market value of the leased premises. Paragraph 4 of the lease provides:

> "4. Lessors shall furnish water and sewerage facilities from their home adjacent to the leased premises until such time as public sewer and water facilities are made available, at which time Lessees shall be ob-

ligated to pay for such facilities as charges are imposed for the use thereof."

Paragraph 6 of the lease provides:

"Lessees shall make all repairs necessary to maintain the building in as good a state of repair as it is now, including all interior plumbing and heating installations, motors and wiring, but not including the roof, which shall be kept in good repair and maintenance by the Lessors. Any repairs or improvements in the nature of alterations considered necessary and proper by Lessee, in furtherance of its restaurant business, shall be made at its expense, and at the expiration of this Lease, or any renewal thereof, shall revert to and become the sole and exclusive property of Lessors."

Paragraph 15 of the lease provides:

"15. If Lessee shall fail or neglect to perform any of the terms, conditions or covenants on their part to be performed, Lessors hereby agree that Lessee shall have a grace period of fifteen (15) days within which to correct any such failure, but upon expiration of said days grace period, Lessors shall, without notice, have the right to enter upon said premises or any part thereof and repossess same and expel Lessee and any and all persons claiming under or through it, and remove any and all furnishings or articles stored upon premises, forcibly if necessary and at Lessee's expense, without being in any manner guilty of trespass or without prejudice to any remedies or rights which they might otherwise have at law or in equity for damages, breach of contract or arrear of rent."

The lease also provided that the first floor of the leased premises would be used and operated by the tenant as a restaurant, including the sale of alcoholic beverages for consumption on or off the leased premises and that the second floor of the leased premises would be used by the tenant as an apartment or apartments with the furnishings presently contained therein, the

tenant being entitled to sublet the apartment or apartments to tenants of its choice and to retain as its own the rents derived therefrom.

The tenant entered into possession of the leased premises and made certain renovations preparatory to the operation of the restaurant business. The tenant was late in its rental payments for October, November and December, 1964, and the rental payment for January, 1965, was over 15 days late. At this time the landlords advised the tenant that it had breached the terms of the lease, and that a further breach would result in the exercise by the landlords of their right of entry under the terms of the lease. The tenant, however, failed to pay the February, 1965, rent within the 15 day grace period provided by paragraph 15 of the lease and on February 18, 1965, the landlords filed a complaint for forcible detainer in the People's Court for Anne Arundel County asking that they be restored to the leased premises.

On February 23, 1965, the tenant filed a bill of complaint for declaratory relief in the Circuit Court for Anne Arundel County in which it alleged, *inter alia,* that the landlords had failed to provide an adequate septic system, that the tenant was willing to "post the rent in escrow pending the correction of the septic system" and had so advised the landlords' counsel, but notwithstanding this offer the landlords had filed the forcible detainer action against the tenant. The bill of complaint asserted six prayers for relief:

1. That the forcible detainer action be enjoined pending a hearing on the merits;

2. That the tenant be granted possession of the premises pending a determination on the merits;

3. That the payment of the pending month's rent and rent to become due be held in abeyance pending a hearing in regard to application of rent for installation of a septic system or payment into court as so directed;

4. That the court decree declaratory relief granting the tenant continued possession and title to the leased premises as so determined by the agreement of the parties;

5. That the court award the tenant "an appropriate amount of damages as so proved upon a hearing of this cause";

6. That the tenant have other and further relief.

Upon a petition of the tenant filed on March 2, 1965, for temporary relief, *pendente lite,* the Chancellor passed an order for the landlords to show cause why the tenant should not be permitted to correct the existing septic system by the most economical and feasible method as permitted by the Anne Arundel Sanitary Regulations and apply the rent for that purpose. The landlords answered this petition indicating a breach of the provisions of the lease by the tenant in not paying the rent. No relief was then granted by the Chancellor, but on April 7, 1965, pursuant to another petition for temporary relief, filed by the tenant, the Circuit Court enjoined the landlords from taking possession of the leased premises pending a hearing of the cause.

In their answer to the bill of complaint, the landlords alleged that the tenant by withholding the rent required to be paid by the lease was "an arbitrary act on its part in breach of its obligation under the terms of the said agreement entitling the defendants (landlords) to repossession of their property by the rights of re-entry and repossession provided in the lease agreement of September 1, 1964." The landlords further alleged that "they are entitled to repossession of their property and damages to them by plaintiff's (tenant's) willful and arbitrary breach of its contractual obligations to them." The landlords prayed that:

1. The lease be declared null and void because of the tenant's breach.

2. The landlords be restored to possession of the leased premises.

3. The landlords have other and further relief.

On August 26, 1966—shortly before the hearing on the merits on September 15, 1966—the landlords filed a motion for leave to file a supplemental counterclaim, reciting the accrual of rent of $13,300 plus interest, the claim having matured subsequent to the filing of the answer by the landlords. This was opposed by an answer by the tenant and on the same day the Chancellor passed an order reciting the proceedings, and indicating that to grant the motion would require that time be given the tenant to file various pleadings with possible further hearings which would "make it impossible to try the case on the day set."

The Chancellor thereupon denied the motion of the landlords for leave to file a supplemental counterclaim.

The case came on for trial on the merits on September 15, 1966, and elaborate testimony was taken. The Chancellor wrote a well-considered and careful opinion, evaluated the testimony and concluded from it that the septic system was adequate except from the period January 15 to February 15, 1965, calculated the net amount rent due and later passed the decree, already mentioned, which is the subject of this appeal.

The tenant makes three contentions before us:

1. The Chancellor, under the pleadings in the case, and because of the nature of the suit seeking a declaratory judgment, should not have declared the rights of the landlords in regard to the rent due and entered a monetary judgment for the rent due.

2. By denying the counterclaim of the landlords, the Chancellor was "estopped" from granting a monetary judgment for rent.

3. The Chancellor was clearly erroneous in finding from the evidence that the septic system was operable.

We are of the opinion that these contentions lack merit and the decree of the Chancellor will be affirmed.

1.

As we have already indicated, the tenant in his bill of complaint for declaratory relief also prayed for supplemental relief by the award of an appropriate amount for damages. The tenant also prayed for other and further relief. In their answer the landlords prayed for a declaration of nullity of the lease because of the alleged breach resulting from the failure to pay rent and for other relief. The question of the payment or non-payment of rent because of the alleged inadequate septic system was an integral part of the "actual controversy" between the parties. It is clear from the Uniform Declaratory Judgments Act, Code (1957), Article 31A and particularly Section 1 that the "declaration may be either affirmative or negative in form and effect; and such declaration shall have the force and effect of a final judgment or decree."

As Judge (now Chief Judge) Hammond aptly said, for the Court, in *McNally v. Moser,* 210 Md. 127, 141, 122 A. 2d 555, 563 (1956), a suit for declaratory relief involving a lease allegedly illegal as a violation of a zoning ordinance:

> "The granting of the judgment for the rent due and unpaid at the time of the decision was proper. Although its granting was not prayed in the original petition, further relief may be granted by the court either on the original petition for declaratory relief or on a subsequent motion. *Borchard, ibid.,* pp. 430, 431; *Turner v. Manufacturers' Cas. Ins. Co.,* 206 Md. 601, 112 A. 2d 670."

By praying for the allowance of damages, and for other relief, the tenant in the original bill of complaint presented in its pleadings the granting of supplemental relief. It is apparent that damages could only be calculated by off-setting past due rental payments. It is clear that the declaration and supplemental relief need not be *in favor* of the plaintiff; it may be made in favor of the defendant as well. See *Case v. Comptroller of the State of Maryland,* 219 Md. 282, 149 A. 2d 6 (1959).

In our opinion, the issue in regard to the amount of rental due was raised by the bill of complaint and no subsequent motion to raise the issue was necessary.

The general rule in equity is that once equitable jurisdiction has attached, the equity court will give full and complete relief in order to avoid circuity of action, even though the relief ultimately given is relief ordinarily granted at law by way of a monetary judgment. *Dormay Construction Corp. v. Doric Co.,* 221 Md. 145, 156 A. 2d 632 (1960). See also *Allview Acres, Inc. v. Howard Investment Corp.,* 229 Md. 238, 182 A. 2d 793 (1962).

There is no reason, in our opinion, to depart from this important principle in equity suits involving declaratory relief.

In addition, the entire issue in regard to the payment of rent and the amount due was fully tried in the trial court and argued without objection by the tenant. If the tenant otherwise might have had any objection to the resolution of this issue, it was waived. *Hamilton v. State,* 225 Md. 302, 170 A. 2d 192 (1961);

*Basoff v. State,* 208 Md. 643, 119 A. 2d 917 (1956) ; *Wathen v. Pearce,* 175 Md. 651, 664-5, 3 A. 2d 486 (1939).

### 2.

The tenant earnestly urges upon us that the filing by the landlords of a motion to file a supplemental counterclaim in regard to rent indicates that the issue was not already presented by the original pleadings and the denial of the motion by the Chancellor effectively removed the issue from decision in the case. We do not agree. In the first place, the issued was raised in the original pleadings, as we have indicated. Secondly, the denial of the motion by the Chancellor was not on the basis that the issue was not raised in the original pleadings, but rather on the basis that the granting of the motion would cause additional delay so that the trial on the merits could not proceed as scheduled on September 15, 1966. It is apparent from the course of the trial, the evidence taken without objection on the issue and the Chancellor's action on this issue in the decree, that the Chancellor was of the opinion that the issue was before the court for final determination. In our opinion, the Chancellor properly acted in making the determination.

### 3.

We now come to the most important issue presented by the tenant. The tenant contends that the Chancellor was clearly erroneous in finding from the evidence that the septic system was operable. Maryland Rule 886 a defines the scope of our review of factual determination by the lower court when an action has been tried by the lower court without a jury as follows: "* * * the judgment of the lower court will not be set aside on the evidence unless clearly erroneous and due regard will be given to the opportunity of the lower court to judge the credibility of witnesses." The tenant recognizes that its burden is a heavy one to persuade us that the Chancellor's findings of fact were clearly erroneous and in our opinion the tenant has not met this burden.

It would serve no useful purpose and would unduly prolong this opinion to set out in detail the conflicting evidence on which the Chancellor decided that but for the one month period between January 15 and February 15, 1965, the septic sys-

tem was operable. It is sufficient to observe that a plumber produced by the tenant testified that when he completed his work for the tenant in January, 1965, the water from the apartment toilet backed up down stairs; he put coloring in the new downstairs toilet and it came out of a pipe on the State road; and, that he did not see how it was possible for the system to take care of the previously operated grocery store and filling station, it being his opinion that the septic system was inadequate for even a small family of three people. A plumber, called to testify by the landlords, however, testified that he inspected the septic system on February 18, 1965, and that the system was clear. A former tenant who operated a grocery store in the leased premises immediately prior to the lease to the tenant, testified for the tenant that the toilet and sink in the store were not used very much, but that the two upstairs apartments were rented, and during his five years of operation, he had no trouble with flushing or odor. He testified that the septic tank was cleaned out once or twice a year and that he had never heard of any complaints from the apartment tenants. The proof also showed that the County Department of Environmental Health had no record of any refusal to grant a certificate of health in regard to the existing septic facilities, and indeed, the Department wrote a letter on December 20, 1965, to counsel for the landlords indicating that a Sanitarian of the Department had made an inspection and reported that the septic system was functioning properly. Mr. Markle, one of the landlords, testified that when he returned from Florida in February, 1965, he found that the pipe near the building had been broken. He removed a section of the pipe to clean it out toward the building and found that the pipe was solidly filled with grease, chunks of concrete, paper and rags like cheesecloth or dish rags. After running the cleaner through the pipe, the water then ran into the septic tank. He then had the septic tank cleaned out and since that time the septic system had operated for the premises and for the trailer which is also rented by the landlords. He further testified that the grocery store and two apartments had used the system since 1949 until the lease to the tenant and that he had no trouble with the operation until the tenant took possession and complained that the system did not operate even before the business opened.

He further testified that the water was of good quality, that he and his family drank it and that no one had ever complained of it except the tenant. There was other testimony which corroborated the testimony of Mr. Markle. The Chancellor accepted the testimony offered on behalf of the landlords and concluded that the opinion of the plumber whose testimony was offered by the tenant was not well founded. It is apparent to us that we cannot say that the findings of fact of the Chancellor were clearly erroneous.

*Decree affirmed, the costs to be paid
by the appellant.*