548 A.2d 151

**FIREMAN'S FUND INSURANCE COMPANY, et al.**

v.

**Walter E. BRAGG, et al.**

**No. 100, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

Oct. 6, 1988.

710

Gregory R. Dent (Law Offices of Austin W. Brizendine, Jr., on the brief), Lutherville, for appellant, Fireman's.

Paul J. Weber (Rollins, Smalkin, Richards & Mackie, on the brief), Baltimore, for appellants, Fuhrman, et al. and Allstate.

Daniel J. Earnshaw (Parker, Pallett & Earnshaw, on the brief) White Marsh, for appellees.

Argued before BISHOP, BLOOM and WENNER, JJ.

WENNER, Judge.

On May 24, 1985, Walter E. Bragg was injured when his motor vehicle was struck by a vehicle owned by Thomas Gaylin and driven by Timothy Fuhrman. As a result of that accident, Bragg filed a single count complaint in the Circuit Court for Baltimore City. He later amended that complaint to add an additional count. In Count I of the amended complaint, he sought to recover damages for injuries he claimed to have suffered as a result of the negligence of Fuhrman, Gaylin, and the driver of a phantom tractor trailer.[1] In Count II Bragg sought to recover damages from Fireman's Fund Insurance Company for breach of contract. Specifically, in Count II, Bragg asserted that Fireman's Fund had "refused to live up to its contractural [sic] obligations under the phantom clause" of the policy of insurance it had provided Bragg. Fireman's Fund filed a cross-claim[2] seeking indemnification from Fuhrman and Gaylin.

A jury found that the accident was caused by the negli-

1. The amended complaint alleged that "[a] phantom vehicle, the driver and owner of which are unknown," ... negligently contributed to the happening of the accident in which Bragg was injured.

2. The cross-claim was dismissed by the circuit court on January 19, 1988.

gence of Fuhrman, Gaylin and the phantom tractor trailer,[3] and assessed Bragg's damages at $70,000. Accordingly, after disposing of a flurry of post-trial motions, the trial judge entered judgments in favor of Bragg against Allstate Insurance Co. in the amount of $50,000 and against Fireman's Fund in the amount of $20,000.

Following the entry of judgment, Fireman's Fund, Allstate and Timothy Fuhrman appealed, presenting a number of issues for our review. After responding to those issues, we shall vacate the judgment of the circuit court and remand the case to that court for the entry of a judgment consistent with this opinion.

The principle issues we have been asked to consider are:

I. Does the language of Article 48A, Section 541(c) apply to the facts of this case so as to reduce Fireman's Fund uninsured motorist liability to zero?

II. Was the judgment and award of costs against Allstate Insurance Company for defendants, Fuhrman and Gaylin, proper?

III. Did the trial court commit prejudicial error when it permitted plaintiff's medical expert, Steven Manekin, to testify as to his opinion of plaintiff's character?

IV. Did the trial court commit prejudicial error when it permitted plaintiff's medical expert to testify as to his opinion of a report written by defendant's medical expert?

V. Did the trial court commit prejudicial error when it permitted portions of appellant's deposition to be read into evidence?

3. The jury was given a verdict sheet in which it was asked to respond to the following question:

> 2. Do you find that the phantom, unidentified tractor-trailer was negligent so as to apply the insurance policy of Fireman's Fund Insurance Company?

The jury responded by checking the block marked "yes."

I.

The most significant disagreement among the parties involves the construction of Art. 48A, § 541 of the Maryland Insurance Code, entitled "Required and optional additional coverage." That section contains several subsections relating to minimum insurance coverage requirements as well as provisions for optional additional coverage. Section 541(c) provides for mandatory uninsured motorist coverage. The term "uninsured motor vehicle" is defined in § 541(c)(1) as "a motor vehicle whose ... use has resulted in the bodily injury or death of an insured, and for which the sum of the limits of liability under all valid and collectible liability insurance policies ... is less than the amount of coverage provided to the insured under this subsection."

Section 541(c)(2) requires every motor vehicle insurance policy issued in Maryland to provide uninsured motorist coverage in at least the amounts required by Title 17 of the Transportation Article, and permits motorists to contract for higher amounts than those provided under Title 17. Section 541(c)(3) limits the liability of an insurer providing uninsured motorist coverage to "the amount of that coverage less the sum of the limits under the liability insurance policies ... applicable to the bodily injury or death of the insured." As Judge Eldridge pointed out for the Court of Appeals in *Hoffman v. United Services Automobile Association*, 309 Md. 167, 172, 522 A.2d 1320 (1987) "[t]his mandatory coverage has the 'purpose of providing minimum protection to individuals injured by uninsured motorists.' "

A.

Initially, we are asked to determine whether § 541(c) is applicable to a situation, such as that in the case *sub judice*, where an individual is injured by the joint negligence of an insured and an uninsured motorist. We hold that § 541(c) is applicable to such a situation.

While it may be that the legislature in enacting § 541(c) contemplated a situation where an individual is injured by

the negligence of a single uninsured motorist, it is nevertheless clear to us that the legislation is not limited to that situation. As we said earlier, § 541(c)(1) defines an "uninsured motor vehicle" as one "whose use has resulted in the bodily injury or death of an insured." It does not provide that use of the uninsured vehicle must be the only cause of the injury.

Here, Bragg was injured by the joint negligence of Fuhrman, Gaylin and a phantom tractor trailer. The tractor trailer was a vehicle "whose use has resulted in the bodily injury ... of [the] insured." Additionally, the sum of the limits of liability under all valid and collectible insurance policies applicable to the phantom tractor trailer, (zero), was less than the amount of uninsured motorist coverage provided to Bragg by Fireman's Fund.

B.

Having determined that § 541(c) is applicable, we must now decide whether the limiting provision of § 541(c)(3) operates to prevent Bragg from recovering under the uninsured motorist provisions of his policy with Fireman's Fund. In other words, where, as in the case *sub judice,* an individual is injured by the negligence of an insured and an uninsured tort-feasor, and the insured tortfeasor's liability insurance equals the injured individual's uninsured motorist coverage, will the limiting provision of § 541(c)(3) prevent his recovery under the uninsured motorist provisions of his own policy? We hold that it will.

Section 541(c)(3) limits the liability of an insurer providing uninsured motorist coverage:

> (3) The limit of liability for an insurer providing uninsured motorist coverage under this subsection is the amount of that coverage less the sum of the limits under the liability insurance policies ... applicable to the bodily injury ... of the insured.

The amount of uninsured motorist coverage provided to Bragg by Fireman's Fund was $50,000. From that must be

subtracted "the sum of the limits under the liability insurance policies ... applicable to the bodily injury ... of the insured." § 541(c)(3). In the case *sub judice,* as we have observed, the only liability insurance policy applicable to the bodily injury of Bragg is the one provided to Gaylin by Allstate Insurance Company. The limit under that policy is $50,000. Thus, the amount of uninsured motorist coverage provided to Bragg less the amount of liability insurance applicable to his injury equals zero.

It is a settled principle of statutory construction that where the language of a statute is plain and free from ambiguity, there is no need to look beyond its words to find its meaning. *Maryland Automobile Insurance Fund v. Stith,* 277 Md. 595, 597, 356 A.2d 272 (1976). When that principle is applied to the case at hand, we conclude that there is no need to look beyond the plain language of § 541(c)(3) to ascertain its meaning. Accordingly, we hold that Bragg may not recover from the uninsured motorist provision of his policy with Fireman's Fund.

Despite the clear statutory language of § 541(c), Bragg nevertheless contends that § 541(c) does not apply to the facts of this case because the purpose for its enactment was to provide the insured the opportunity to recover only in an underinsured motorist situation. He relies principally on two recent Maryland decisions that discuss uninsured and underinsured motorist coverage.

In *Christensen v. Wausau Insurance Companies,* 69 Md.App. 696, 519 A.2d 776 (1987) we were asked to interpret an insurance policy that provided separate coverage for uninsured motorists and underinsured motorists. Specifically, we were asked to determine what was meant by underinsurance, and whether, under the terms of Christensen's policy, Wausau was liable for underinsured motorist coverage.

In that case, Christensen was injured when he was struck by a motor vehicle driven by Gerd W. Herrman. Although he settled with Herrman's insurance carrier for $20,000, the

maximum available under Herrman's policy, that settlement did not entirely cover the damages he suffered in the accident. Christensen therefore sued his insurer, Wausau, based upon an underinsured motorist endorsement in its policy, to recover the difference between the settlement and his actual damages. The trial court denied him recovery. Upon appeal, we reversed. We reasoned that uninsured motorist coverage is applicable when the vehicle involved in an accident is without insurance or is insured for less than the required liability limits. Underinsured motorist coverage, on the other hand, is applicable when the tort-feasor carries insurance which comports with the legal requirements, but that insurance is inadequate to cover the damages incurred. Since Christensen had paid a separate, additional premium for the underinsurance, we held that Wausau could not escape liability by claiming that the setoff provisions applicable to Christensen's uninsurance would also be applicable to his underinsurance.

In *Hoffman v. United Services Automobile Association,* 309 Md. 167, 522 A.2d 1320 (1987), Hoffman and his wife were passengers in a car driven by Richard Whelan. Hoffman was seriously injured and his wife killed when the vehicle in which they were riding was struck by a vehicle driven by Richard Nowakowski. Nowakowski was insured with Traveler's Insurance Company, which provided liability coverage of $20,000/$40,000. Whelan's car was insured by Hanover Insurance Company, which provided underinsured motorist coverage of $50,000/$100,000. By agreement of the parties, Nowakowski's liability coverage and Whelan's underinsured motorist coverage were apportioned.[4] Subsequently, Hoffman sued his own insurance carrier under the

4. Under the apportionment, the estate of Sandra Hoffman was entitled to receive a full per person limit of $20,000 from Nowakowski's liability coverage in Travelers and $30,000 from Whelan's underinsured motorist coverage in Hanover ($50,000 per person limit minus $20,000 paid by Travelers). Kenneth Hoffman was entitled to receive $5,398 from Travelers and $8,379 from Hanover. Hoffman at 169–170.

supplementary endorsement relating to underinsured motorists. He sought to combine or "stack" the underinsured motorist coverage of the two cars owned by the Hoffmans for total coverage of $600,000/$1,000,000.[5]

In that case, although the Court of Appeals precluded stacking the underinsured motorist coverage it, concluded that § 543(a) does not apply to an automobile liability policy where the uninsured motorist coverage is amended by an endorsement providing supplementary underinsured motorist coverage as well as uninsured motorist coverage.

While Bragg contends that *Christensen* and *Hoffman* stand for the proposition that § 541(c) applies only to an underinsured motorists situation, we see it quite differently. In *Christensen* we said that uninsured motorist coverage is applicable not only when the tort-feasor carries no liability insurance but also when the tort-feasor carries less insurance than the amount required by law. We did not intend, as appellee suggests, to limit the application of § 541(c) to "underinsured" motorists situations. Similarly, in *Hoffman,* the Court of Appeals said that the purpose of Section 541(c)(1) "was to *broaden* the concept of an uninsured motor vehicle," 309 Md. at 172, 522 A.2d 1320. (Emphasis supplied). We do not believe the court intended, therefore, to limit § 541(c)(1) to underinsured motorist situations. While Bragg may find comfort from language in *Christensen* and *Hoffman* which seems to support his position, we point out that that language arose in a different context. Accordingly, we hold that § 541(c) applies to the facts of this case, and operates to prevent Bragg from recovering under the uninsured motorists provisions of his policy with Fireman's Fund.[6]

---

5. Hoffman's insurance carrier was United Services Automobile Association. It provided "underinsured" motorist coverage of $300,000/$500,000 for each of his vehicles.

6. We note that the set off provision of Bragg's policy parallels the language of § 541(c)(3). Therefore, the result would be no different under the language of that policy.

Although, as we have said, we are here dealing with an uninsured motorist situation, we believe that even if the phantom tractor trailer were located and found to be underinsured, the result would be no different.

II.

The one matter upon which all of the parties agree is Allstate's contention that the judgment rendered against it is invalid. They are, of course, correct because Allstate was not a party to this litigation. *See, Brashears v. Collison,* 207 Md. 339, 349, 115 A.2d 289 (1955). Upon remand we shall direct the circuit court to correct the judgment to that extent.

III.

The remaining arguments, raised by Fuhrman and Gaylin, challenge the admission of certain evidence during Bragg's case-in-chief.

A.

First, they argue that the trial court committed reversible error when it permitted Bragg's medical expert, Dr. Manekin, to testify as to his opinion of Bragg's character. Inasmuch as the issue has not been preserved for review, we need not address it.

Rule 2–517 makes it clear that in order to preserve an issue for appellate review "[a]n objection to the admission of evidence shall be made at the time the evidence is offered or as soon thereafter as the grounds for objection become apparent." When a party has the option of objecting, his failure to do so is regarded as a waiver estopping him from obtaining review of that point on appeal. *Phil J. Corp. v. Markle,* 249 Md. 718, 725, 241 A.2d 718 (1968). It is not enough that another party has objected to the same evidence. Each party must make it clear that he or she has an objection to the particular evidence. *See Id.*

Here, although counsel for Fireman's Fund promptly objected when Dr. Manekin began to testify, on appeal Fireman's Fund is not challenging the admissibility of that testimony. At no point during Dr. Manekin's testimony did counsel for Fuhrman and Gaylin object, nor did he attempt to join in the objection voiced by Fireman's Fund. We therefore hold that the matter has not been preserved for our review.

B.

Fuhrman and Gaylin next complain that the trial court erred when it permitted Dr. Manekin, during Bragg's case-in-chief, to criticize a report written by their medical expert, Dr. Sapre. Dr. Sapre had not yet testified when Dr. Manekin told the jury that, in his opinion, Sapre's examination was incomplete and his findings were incorrect.

Of course, the order of proof in a civil trial is largely a matter left to the discretion of the trial court. *Thimatariga v. Chambers,* 46 Md.App. 260, 416 A.2d 1326, *cert. denied,* 288 Md. 744 (1980), *Martin Fertilizer Co. v. Thomas & Co.,* 135 Md. 633, 109 A. 458 (1920). The plaintiff may present evidence during its case-in-chief which is relevant only because it rebuts an anticipated defense, if in the exercise of its discretion it is permitted by the trial court. *McGoldrick v. Pennsylvania Railroad Co.,* 430 Pa. 597, 241 A.2d 90, 93 (1968) (citing *Edensburg Trust Co. v. Pike,* 296 Pa. 462, 146 A. 122 (1929)). *See also* McLain, *Maryland Evidence* § 300.2 (1987). That decision will be disturbed on appeal only if it is shown to be an abuse of discretion resulting in clear prejudice. *McGoldrick, supra,* 241 A.2d at 93.

While it is no doubt the better practice to permit a witness to testify prior to rebutting that testimony, we are unable to find that the trial court abused its discretion when it allowed the testimony of Dr. Manekin during Bragg's case-in-chief. Dr. Sapre was given ample opportunity to rehabilitate himself during Fuhrman's and Gaylin's case-in-

chief by testifying as to the accuracy of his examination and findings. Indeed, Dr. Sapre had the last word on the matter. We find no abuse of discretion.

C.

During his deposition, Fuhrman was asked whether he agreed with a previous witness that the accident was his fault. Fuhrman's counsel objected and instructed Fuhrman not to answer the question.

The trial judge permitted a portion of Fuhrman's deposition to be read to the jury, including the portion we have just referred to. Fuhrman and Gaylin now argue that it was reversible error to permit the reading of that portion of Fuhrman's deposition as it contained an argumentative question which no doubt improperly influenced the jury.

Questions concerning the admissibility of evidence are within the discretion of the trial court. *Q.C. Corp. v. Maryland Port Admin.*, 68 Md.App. 181, 510 A.2d 1101 (1986), *rev'd on other grounds,* 310 Md. 379, 529 A.2d 829 (1987). Ordinarily, that decision will not be reversed on appeal unless there has been clear prejudice. *Tully v. Dasher,* 250 Md. 424, 436, 244 A.2d 207 (1968). *Johnson v. State,* 303 Md. 487, 528, 495 A.2d 1 (1985), *cert. denied,* 474 U.S. 1093, 106 S.Ct. 868, 88 L.Ed.2d 907 (1985).

We have carefully examined the record and we fail to see how Fuhrman and Gaylin were prejudiced by the trial court's admission of the evidence about which complaint is made. They were no worse off than if an objection to the same question asked of Fuhrman at trial had been sustained. There was no error.

Summary

Upon remand the court shall:

(1) Strike the judgment and award of costs against Allstate.

(2) Enter a judgment against Fuhrman and Gaylin in the amount of $70,000, and assess the costs of the proceedings.

(3) Grant Fireman's Fund's motion for summary judgment.

JUDGMENT OF THE CIRCUIT COURT VACATED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE DIVIDED EQUALLY AMONG THE PARTIES.