## NATIONWIDE MUTUAL INSURANCE CO.

v.

**Andrew Allison WENDLER, et al.**

Civ. No. JFM–91–2707.

United States District Court,
D. Maryland.

Aug. 10, 1992.

Gregory L. VanGeison, Anderson, Coe & King, Baltimore, Md., for plaintiff.

Scott Scherr, Israelson, Salsbury, Clements & Bekman, George E. Rippel, Jr., Cooper & Rippel, Baltimore, Md., N. Christopher Menges, Menges & Snyder, York, Pa., for defendants.

### MEMORANDUM

MOTZ, District Judge.

Nationwide Mutual Insurance Company ("Nationwide") has brought this action seeking a declaratory judgment of its legal obligations under the uninsured/underinsured motorist endorsement to an automobile insurance policy which it issued to An-

drew Allison Wendler. Nationwide has named as defendants Wendler and Lawrence M. Kownacki, both in his individual capacity and in his capacity as personal representative of the estates of Rose Elaine Kownacki and Abigail Rose Kownacki. The parties have filed cross-motions for summary judgment. There is no dispute as to any material fact, and the issues presented are ripe for decision.

## I.

On February 3, 1990, Wendler (Nationwide's named insured) was driving a car owned by Enterprise–Rent–A–Car. Lawrence Kownacki and his wife Rose (who was seven months pregnant) were passengers in Wendler's vehicle. A third party, Isabel Hartman, drove through a red light and collided with the Wendler/Kownacki car. Mr. Kownacki's wife was killed in the collision. Their baby, Abigail, was delivered by caesarean section but also died two days later. Wendler and Mr. Kownacki, as well as several other persons, were injured.

Hartman (who, for purposes of this action, is assumed to have been negligent) had an automobile liability policy issued by Erie Insurance Exchange ("Erie"). That policy had a per accident limit of $300,000. The uninsured/underinsured motorist endorsement to Wendler's policy issued by Nationwide had limits of $100,000 per accident, $50,000 per person.

Wendler, the Kownacki's and five other persons made claims under Hartman's Erie policy. In due course Erie filed an interpleader action the Circuit Court for Cumberland County, Pennsylvania for the purpose of dividing the proceeds of the policy. Counsel for the parties, under the direction of the court, were able to agree on a proposed distribution among the nine claimants. The court then issued a show cause order compelling all of the uninsured motorist carriers to come forward within thirty days if they objected to the proposed distribution. Nationwide was notified of the proposed distribution and did not object. It also waived its right of subrogation against Hartman so that Wendler and the Kownacki's could receive their portion of the settlement money.

Of the $300,000 Erie policy, two $100,000 shares were distributed to the two Kownacki estates, $10,000 was distributed to Mr. Kownacki in his individual capacity and $42,500 was distributed to Wendler. The Kownacki's and Wendler then made demand on Nationwide for underinsured benefits allegedly due under Wendler's Nationwide policy. Nationwide denied the claims and instituted this action.

## II.

■ The first question presented is one of choice of law. In a diversity case a federal court must apply the conflict of law rules of the state in which it sits. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941); *Macke Laundry Service Ltd. Partnership v. Alleco, Inc.*, 743 F.Supp. 382, 384 n. 1 (D.Md.1989). The Maryland Court of Appeals considers a suit to recover uninsured motorist benefits as a contract action. *Lane v. Nationwide Mut. Ins. Co.*, 321 Md. 165, 169–70, 582 A.2d 501 (1990); *Aetna Cas. & Sur. Co. v. Souras*, 78 Md.App. 71, 77, 552 A.2d 908 (1989); *Reese v. State Farm Mut. Auto. Ins. Co.*, 285 Md. 548, 553, 403 A.2d 1229 (1979). The well-settled rule in Maryland is that the law of the place of contracting governs the questions relating to the validity, effect, and interpretation of a contract, *Macke Laundry Service Ltd. Partnership v. Alleco, Inc.*, 743 F.Supp. at 384 n. 1 (*citing Scott v. First Nat'l Bank of Baltimore*, 224 Md. 462, 465, 168 A.2d 349 (1961)), and that the place of contracting is "the state in which the policy is delivered and the premiums are paid." *Aetna Cas. & Sur. Co. v. Souras*, 78 Md.App. at 77, 552 A.2d 908. In this case, interpretation of the Nationwide policy is at issue, and it is undisputed that the policy was delivered and that premiums were paid in Maryland.

Defendants, desirous of taking advantage of Pennsylvania's rule permitting an insured to "stack" insurance policies, *see, e.g., Tallman v. Aetna Cas. & Sur. Co.*, 372 Pa.Super. 593, 539 A.2d 1354 (1988),

contends that Pennsylvania law nevertheless applies. First, they argue that a claim for uninsured motorist coverage should be characterized as a tort action, in which event under Maryland conflicts rules, Pennsylvania law would apply. *See, e.g., Sokolowski v. Flanzer,* 769 F.2d 975, 978 (4th Cir.1985); *Hauch v. Connor,* 295 Md. 120, 453 A.2d 1207, 1209 (1983). This argument simply ignores the contrary holding in *Lane v. Nationwide Mut. Ins. Co., supra,* that a suit under an uninsured motorist endorsement is a contract action.

■ Alternatively, defendants contend that the section of the policy issued by Nationwide to Wendler which is entitled "FINANCIAL RESPONSIBILITY" causes Pennsylvania law to apply. That section provides:

> FINANCIAL RESPONSIBILITY: If the financial responsibility law of any state or province requires greater liability limits than those provided by this policy, we will automatically adjust the policy to comply. This policy also will be interpreted to comply with the non-resident requirements of any compulsory motor vehicle insurance law, or similar law, regarding the kinds of limits of coverage provided. However, any loss payment under this extension of limits or coverage will be made only over and above any other collectable motor vehicle insurance. In no case will anyone be entitled to duplicate payments for the same loss.

Self-evidently, this section is not a choice of law provision and it is not related to underinsured motorist coverage. Rather, it concerns adjustment of the liability limits of the insured if the insured causes an accident in another state which has a financial responsibility law requiring greater liability limits than those afforded by the policy.

### III.

■ The substantive issue presented is whether or not Hartman, the driver who is assumed to have been responsible for the accident in which Wendler and the Kownacki's were involved, was "underinsured" within the meaning of Wendler's Nationwide policy and the Maryland Insurance Code. Nationwide contends that Hartman was not underinsured because *the limit of liability* under the policy issued to her by Erie was $300,000—a limit which exceeded the amount of Wendler's uninsured motorist coverage (which was $50,000/$100,000). Defendants, on the other hand, assert that Hartman was underinsured and that they are entitled to underinsured motorist benefits under Wendler's Nationwide policy because they *received* less than the underinsured motorist coverage limits from Hartman's. Specifically, Wendler claims that he is entitled to an additional $7,500 (since he received only $42,500 under Hartman's Erie policy), and Lawrence Kownacki in his individual capacity claims that he is entitled to receive $40,000 (since he received only $10,000 under Hartman's Erie policy).[1]

The Nationwide policy defines "uninsured motor vehicle" as follows:

> An uninsured motor vehicle includes an underinsured motor vehicle. This is one for which there are bodily injury and property damage liability coverage or bonds in effect. Their total amount, however, is less than the limits of this coverage. These limits are shown in your policy's Declarations.

This definition is in accord with the Maryland Insurance Code which contains a similar definition:

> In this subsection "uninsured motor vehicle" means a motor vehicle whose ownership, maintenance, or use has resulted in the bodily injury or death of an insured, and for which the sum of the limits of liability under all valid and collectible liability insurance policies, bonds and securities applicable to the bodily injury or death is less than the amount of coverage provided under this subsection.

Md.Code Ann. art. 48A § 541(c)(1).

Section 541 goes on to define the limit of liability for any insurer providing uninsured motorist coverage in Maryland:

---

**1.** Mr. Kownacki has also asserted claims against Nationwide in his capacity as the representative of the estates of his wife and daughter. However, it appears that even if defendants' interpretation of Maryland law were correct, these claims would not be viable since the estates each received $100,000 under Hartman's Erie policy—amounts in excess of what they would have been entitled to under Wendler's Nationwide policy.

The limit of liability for an insurer providing uninsured motorist coverage under this subsection is the amount of that coverage less the sum of the limits under the liability insurance policies, bonds, and securities applicable to the bodily injury or death of the insured.

Md.Code Ann. art. 48A § 541(c)(3).

Both the policy and the statute are straightforward and by their terms only require a comparison of the applicable coverage limits to determine if a motorist is underinsured. Nevertheless, one Maryland Court of Special Appeals decision opens the door to Defendants' interpretation of them. In *Aetna Cas. & Sur. Co. v. Souras*, 78 Md.App. at 78, 552 A.2d at 912, the court stated that an injured passenger who sought to obtain uninsured motorist benefits was entitled to recover the amount of his or her uninsured motorist coverage limits minus the amount "received" from the tortfeasor's insurer. That statement, however, must be read in context. The court had previously stated that a motorist is uninsured "to the extent that the person responsible for an accident has less liability coverage than the insured under the uninsured provisions of its own policy." 78 Md.App. at 75–76, 552 A.2d at 910. Since the $25,000 received by the insured was equal to the amount of the liability coverage afforded under the uninsured motorist policy, there was no reason for the court to distinguish between the two.

Another case, *Fireman's Fund Ins. Co. v. Bragg*, 76 Md.App. 709, 548 A.2d 151 (1988), strongly suggests that it is the limits of liability, not the amount of benefits received, which is determinative of the question of underinsurance. In that case Bragg sustained injuries in an automobile accident jointly caused by the negligence of an insured driver and a phantom driver. A jury assessed his total damages as $70,000. The driver's liability coverage was $50,000, and Bragg's uninsured motorist coverage was $50,000. He attempted to collect $20,000 under his uninsured motorist endorsement since the phantom driver, one of the tortfeasors, was an uninsured motorist in the eyes of the law. The Court of Special Appeals denied his claim.

Defendants here seek to distinguish *Fireman's Fund* on the ground that Bragg had received the full amount of his uninsured motorist coverage ($50,000). In contrast, Wendler has received only $42,500 and Lawrence Kownacki in his individual capacity has received only $10,000 of the available limit of $50,000 per person. While that factual difference does exist, nothing in the court's opinion reflects that it was based upon Bragg having actually received $50,000. To the contrary, the court's focus seems to have been squarely upon the applicable policy limits. Thus, it stated that Bragg could not recover under his uninsured motorist endorsement because "the amount of uninsured motorist coverage provided to ... [him] less the amount of liability insurance applicable to his injury equals zero." 76 Md.App. at 716, 548 A.2d at 154. The court then went on to explain:

It is a settled principle of statutory construction that where the language of a statute is plain and free from ambiguity, there is no need to look beyond its words to find its meaning.... [W]e conclude that there is no need to look beyond the plain language of § 541(c)(3) to ascertain its meaning.

In light of the language of Section 541(c)(3), I conclude that under Maryland law defendants may not prevail on their underinsurance claim against Nationwide. I might note that this conclusion is consistent with a ruling made on similar facts by the Connecticut Supreme Court under a nearly identical statute. *See American Motorist Ins. Co. v. Gould*, 213 Conn. 625, 569 A.2d 1105 (1990); *see also Connolly v. Royal Globe Ins. Co.*, 455 A.2d 932 (Me. 1983); *Thiry v. Horace Mann Mut. Ins. Co.*, 269 N.W.2d 66 (Minn.1978). If the Maryland General Assembly should deem this result to be unjust, it may easily amend Section 541(c)(3) in order to measure the extent of underinsurance in multiple claims cases by the amount of benefits received rather than the extent of policy limits. *See, e.g.*, Tex.Ins.Code Ann. art.

5.06–1(2)(b); W.Va.Code § 33–6–31(b)(ii).[2]

## IV.

 The Kownacki's have asserted an ancillary claim that they are entitled to $10,000 in benefits under the "Seat Belt Extended Coverage" clause of the Personal Injury Protection ("PIP") coverage under the Nationwide policy. That claim is clearly without merit. The individuals entitled to PIP coverage under the Nationwide policy are persons "occupying your [Wendler's] auto as a guest or passenger," persons "using your auto with your permission," or pedestrians hit by "your auto." The policy further defines "your auto" as "the vehicle or vehicles described in the attached Declarations," i.e. Wendler's 1987 Nissan Sentra. In light of the fact that the Kownacki's were injured while passengers of a vehicle leased by Wendler from Enterprise–Rent–A–Car, not his own Nissan, at the time of the accident in question, they clearly are not entitled to coverage under this provision.

A separate order effecting the rulings made in this memorandum is being entered herewith.

## ORDER

For the reasons stated in the memorandum entered herein, it is, this 10th day of August 1992

ORDERED

1. Nationwide Mutual Insurance Co.'s motion for summary judgment is granted;

2. Defendants' motions for summary judgment are denied; and

3. It is hereby declared that Nationwide has no obligation to pay any claims asserted by defendants in connection with the motor vehicle accident which occurred on February 3, 1990 under the uninsured motorist provisions of the automobile liability insurance policy issued by Nationwide to defendant Andrew Allison Wendler or under the "Seat Belt Extended Coverage" provision contained in the Personal Injury Protection endorsement to that policy.

---

**2.** In light of my holding that Nationwide is not liable under the uninsured motorist endorsement, I need not decide its alternative contention that it may raise the Defendants' release of Hartman in the Pennsylvania proceedings as a substantive defense despite the fact that it did not object to the distribution of the proceeds of the Erie policy and waived its rights to subrogation against Hartman in the Pennsylvania proceedings. I might note, however, that this contention is of dubious validity. *See, e.g., Lambert v. State Farm Mut. Auto. Ins. Co.,* 576 So.2d 160, 166–167 (Ala.1991); *McDonald v. Republic–Franklin Ins. Co.,* 45 Ohio St.3d 27, 543 N.E.2d 456, 460 (1989); *Schmidt v. Clothier,* 338 N.W.2d 256, 263 (Minn.1983).